**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**MACON DIVISION**

| | | |
|---|---|---|
| **RALPH HARRISON BENNING,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| v. | : | **Case No. 5:18-cv-00087-TES-CHW** |
| | : | |
| **COMMISSIONER GREGORY C DOZIER,** | : | |
| *et al.*, | : | **Proceedings Under 42 U.S.C. § 1983** |
| | : | **Before the U.S. Magistrate Judge** |
| **Defendants.** | : | |
| | : | |

## REPORT AND RECOMMENDATION

Plaintiff Ralph Harrison Benning, a state prisoner proceeding *pro se*, has brought this 42 U.S.C. § 1983 action against Defendants Commissioner Gregory Dozier, Margaret Patterson, and Jennifer Edgar, alleging violations of his First Amendment right to communicate with persons outside of prison. (Docs. 1, 28). Defendant Dozier is sued in his official capacity as Commissioner of the Georgia Department of Corrections ("GDC") only.[1] Plaintiff's allegations specifically refer to the censorship of four emails sent by Plaintiff from Wilcox State Prison on September 24, 2017, October 9, 2017, and February 6, 2018, respectively. Because there is no genuine issue of material fact left to be tried regarding Plaintiff's First Amendment claims, it is **RECOMMENDED** that the summary judgment motion be **GRANTED** and that judgment be entered in Defendants' favor.

### I.    BACKGROUND

Plaintiff's allegations concern the censorship of four emails sent by him to persons outside the prison system through the inmate email service at Wilcox State Prison. (Doc. 28, p.

---

[1] According to Defendants, Gregory Dozier has been replaced as the Commissioner of the GDC by Timothy Ward. (Doc. 64-1, p. 1 n.1). Therefore, Ward is automatically substituted for Dozier as a defendant in this action. Fed. R. Civ. P. 25(d).

5). According to Plaintiff, an email he sent to his sister, Ms. Elizabeth Anne Knott, on September 24, 2017, was intercepted by GDC employee Defendant Patterson; two emails he sent to Ms. Knott on October 9, 2017, were intercepted by GDC analyst Defendant Edgar; and an email sent to the Aleph Institute, a religious organization, on February 6, 2018, was intercepted by Defendant Patterson. (*Id.*). Plaintiff claims that none of the four emails reached the intended recipient and that the emails were instead withheld by the GDC because the content of the emails violated GDC email policy, which, Plaintiff contends, the Commissioner implemented. (Docs. 1, p. 11; 28, pp. 5, 11–12).

Upon screening of Plaintiff's allegations pursuant to 28 U.S.C. § 1915A(a), Plaintiff was allowed to proceed with a First Amendment claim[2] against Defendant Dozier in his official capacity only, and his claims against a Doe defendant, "Inmate Email Censor," were dismissed. (Docs. 7, 16). When the identity of the parties allegedly responsible for censoring Plaintiff's emails came to light, Plaintiff was permitted to add Patterson and Edgar as defendants, as well as an additional claim concerning the censored email to the Aleph Institute in 2018. (Docs. 23, 25, 28). Apart from the addition of Patterson and Edgar as parties and the claim concerning the 2018 email, the original complaint and the amended complaint are substantively identical. (Docs. 1, 28).

In relief, Plaintiff requests compensatory damages amounting to 35 cents per censored email, $10 in nominal damages, $1,000 in punitive damages, and litigation costs. (Doc. 28, p. 13). Plaintiff also moves for declaratory and injunctive relief. (*Id.*, pp. 6, 13).

---

[2] Plaintiff's attempt to add due process and other claims in his response to Defendants' motion for summary judgment is too late. In the Eleventh Circuit, "a plaintiff cannot amend his complaint through argument made in his brief in opposition to the defendant's motion for summary judgment." *Miccosukee Tribe of Indians of Fla. v. United States*, 716 F.3d 535, 559 (11th Cir. 2013) (citing *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004)). Notably, Plaintiff did not object to the Court's screening Order and Recommendation. (Doc. 16, p. 1). Accordingly, only the First Amendment claim permitted to proceed at screening is properly before the Court.

## II.    SUMMARY JUDGMENT STANDARD

A party is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue of fact is 'material' if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A factual dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party; however, "the mere existence of a scintilla of evidence in support of the position will be insufficient." *Johnson v. Bd. of Regents of Univ. of Georgia*, 263 F.3d 1234, 1243 (11th Cir. 2001) (quoting *City of Delray Beach v. Agricultural Ins. Co.*, 85 F.3d 1527, 1530 (11th Cir. 1996)).

The party moving for summary judgment bears the burden of informing the Court of the basis for its motion, and of citing "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," that support summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24 (1986). In resolving motions for summary judgment, the Court must view the evidence in the light most favorable to the nonmoving party, *Tolan v. Cotton*, 572 U.S. 650, 657 (2014), which requires the Court to believe the evidence provided by the nonmovant and draw all justifiable inferences in the nonmovant's favor, *Anderson*, 477 U.S. at 255. "Inferences based on speculation," however, "will not suffice to overcome a motion for summary judgment." *Melton v. Abston*, 841 F.3d 1207, 1219 (11th Cir. 2016) (citation and internal quotation omitted). In opposing summary judgment, the nonmoving party may not rest upon mere allegations or denials in the pleadings but instead must "make a showing sufficient to

establish the existence of an element essential to [his] case, and on which [he] will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322.

## III.    FIRST AMENDMENT CLAIM

Because the challenged prison policies governing outgoing email correspondence are valid and reasonably related to legitimate penological interests, Defendants' are entitled to summary judgment.

As an initial matter, Defendants' argument that Plaintiff does not have a First Amendment right to access email, although well founded, *see e.g.*, *Holloway v. Magness*, No. 5:07-CV-88 JLH-BD, 2011 WL 204891, at *7 (E.D. Ark. Jan. 21, 2011) ("[T]he First Amendment [does not] require[] that the government provide telephones, videoconferencing, email, or any of the other marvelous forms of technology that allow instantaneous communication across geographical distances . . . ."), *aff'd*, 666 F.3d 1076 (8th Cir. 2012), misses the issue raised in this case. Plaintiff does not claim that, as an inmate, he has a constitutional right to access email. Instead, the issue at hand is whether, once Plaintiff sent emails using the inmate email system, prison officials' censorship of those communications infringed upon his First Amendment rights. *See* (Doc. 7, p. 6). It is well established that inmates have a First Amendment right to communicate with persons outside the prison system. *Procunier v. Martinez*, 416 U.S. 396, 408–09 (1974), *overruled on other grounds by Thornburgh v. Abbott*, 490 U.S. 401 (1989). That right includes both incoming and outgoing communications, *Abbott*, 490 U.S. at 407, and is not dependent on the form of communication used, *see Solan v. Zickefoose*, 530 F. App'x 109, 110 (3d Cir. 2013) (recognizing that "e-mail can be a means of exercising" the First Amendment right of communicating with non-inmates); *Bonner v. Outlaw*, 552 F.3d 673, 677 (8th Cir. 2009) (citing *Martinez*, 416 U.S. at 407). Therefore, in censoring the

four emails at issue, prison officials impinged upon Plaintiff's First Amendment interest in communicating with persons outside the prison system. *Martinez*, 416 U.S. at 408–09.

When a prison regulation or policy impinges on an inmate's constitutional rights, "the regulation is valid if it is reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987). Four "factors that are relevant to, and that serve to channel, the reasonableness inquiry," *Abbott*, 490 U.S. at 414, are:

> (1) whether there is a 'valid, rational connection' between the regulation and a legitimate governmental interest put forward to justify it; (2) whether there are alternative means of exercising the asserted constitutional right that remain open to the inmates; (3) whether and the extent to which accommodation of the asserted right will have an impact on prison staff, inmates, and the allocation of prison resources generally; and (4) whether the regulation represents an 'exaggerated response' to prison concerns.

*Pesci v. Budz*, 935 F.3d 1159, 1166 (11th Cir. 2019) (quoting *Pope v. Hightower*, 101 F.3d 1382, 1384 (11th Cir. 1996)); *see Turner*, 482 U.S. at 89–91.

An important principle to consider when evaluating the *Turner* factors is the deference accorded by federal courts to state prison authorities, given the "inordinately difficult undertaking" of prison administration and in light of separation of powers concerns. *Turner*, 482 U.S. at 84–85. "The distribution of burdens between the parties also reflects the difficulties of prison management from the bench: the burden 'is not on the State to prove the validity of prison regulations but on the prisoner to disprove it.'" *Pesci*, 935 F.3d at 1166 (quoting *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003)).

A reasonable jury could not find that the prison's email policy violated Plaintiff's First Amendment rights. First, the regulation and the governmental interest asserted by Defendants to justify the policy share a valid, rational connection. To satisfy *Turner*'s first factor, Defendants need not "present evidence of an actual security breach." *Prison Legal News v. Sec'y, Fla. Dep't of Corr.*, 890 F.3d 954, 968 (11th Cir. 2018). Instead, to accord state prison authorities the

appropriate deference, "prison officials must be able to 'anticipate security problems and . . . adopt innovative solutions' to those problems to manage a prison effectively." *Id.* (emphasis omitted) (quoting *Turner*, 482 U.S. at 89). "This factor is the most important of the four, and indeed must be satisfied if the policy is to survive." *Pesci*, 935 F.3d at 1167.

The parties do not dispute that the four emails at issue violated the GDC Standard Operating Procedure, specifically Policy 204.10, which governs inmates' use of the Georgia Offender Alternative Learning, or GOAL, mobile device and the J-Pay Kiosk, through which offenders may send and receive emails and engage in other permitted electronic activities.[3] (Defendants' SMF, Doc. 64-2, ¶¶ 31–47; Plaintiff's SMF, Doc. 80, pp. 4–5). Policy 204.10 prohibits, among other things, inmates from requesting that emails be forwarded, sent, or mailed to persons other than the original recipient and from requesting or sending information on behalf of or about another offender. (Doc. 64-4, pp. 14–15). There is no dispute that the three emails sent to Ms. Knott on September 24 and October 9, 2017, respectively, violated the former prohibition and that the 2018 email sent to the Aleph Institute violated the latter. (Docs. 64-2, ¶¶ 33–35, 40, 42, 46; 80, pp. 4–5). In addition, inmates are prohibited from contacting persons who have not been screened by the GDC's security personnel. (Doc. 64-2, ¶¶ 6–7). Pursuant to prison policy, Plaintiff is only permitted to communicate via email with persons who have passed the necessary background checks. (*Id.*, ¶ 7).

Defendants' asserted interest in maintaining the above policies is legitimate, valid, and

---

[3] Plaintiff denies that Policy 204.10 was in effect "at all times relevant to th[e] complaint," (Doc. 80, p. 3), but fails to make a showing sufficient to contradict evidence, noted on the policy itself, that the policy was effective August 15, 2017, just over a month before the first email at issue was sent, (Decl. of Richard Wallace, Doc. 64-4, ¶ 8; Doc. 64-4, pp. 10–21). In support, Plaintiff cites to a different policy, Policy 227.06. (Doc. 80, p. 4). That policy, however, was effective February 26, 2018, twenty days after the final email at issue in this case, the February 6, 2018 email to the Aleph Institute, was sent. (Doc. 80-2). Moreover, that policy governs inmates' receipt of mail, not outgoing email. (*Id.*). Policy 227.06, therefore, does not apply to the circumstances of this case.

rationally connected to those policies. Defendants assert that Plaintiff's request to Ms. Knott to forward his email to third parties posed the security concern that he was attempting to communicate indirectly with persons who were not cleared by prison security personnel and who may have had a record of criminal activity. (Doc. 64-1, p. 11). They contend that the policy was designed to "curb criminal activity and ensure security," (*id.*, p. 12), by "preventing possible threats to citizens and prison personnel." (Doc. 64-4, ¶ 28). The asserted interest in reducing criminal activity and threats to the public and prison officials is legitimate, *see Pope v. Hightower*, 101 F.3d 1382, 1385 (11th Cir. 1996) ("Reduction of criminal activity and harassment qualifies as a legitimate governmental objective."), and rationally related to the restrictions imposed on Plaintiff's outgoing emails, *see id.* ("The connection between that objective and the use of a ten-person calling list is valid and rational because it is not so remote as to render the prison telephone policy arbitrary or irrational."). For similar reasons, the governmental interest asserted to justify the ban on including information about other inmates in email correspondence is legitimate and rationally connected to the regulation. According to Defendants, identifying information sent to third parties threatens the security of prison staff and other inmates. (Docs. 64-1, p. 11; 64-4, ¶ 29). As stated above, the prevention of threats and harassment is a legitimate governmental goal, *see Pope*, 101 F.3d at 1385, and Plaintiff has not shown otherwise, *Pesci*, 935 F.3d at 1166 (discussing the plaintiff's burden under *Turner*). Again, an actual breach of security need not occur before a regulation can be deemed rationally related to a legitimate objective. *See Prison Legal News v. Sec'y, Fla. Dep't of Corr.*, 890 F.3d 954, 968 (11th Cir. 2018).

In sum, regarding *Turner*'s first factor, there is no genuine issue of material fact left to be tried. Defendants have presented legitimate governmental interests in support of the challenged

policies, and Plaintiff has not met his burden of disproving those interests or the valid, rational connection between those interests and the policies at issue.

Second, the undisputed evidence shows that there were alternative means of exercising the First Amendment right to communicate with non-inmates available to Plaintiff. When considering *Turner*'s second factor, "the Supreme Court has instructed that the right must be viewed sensibly and expansively." *Pope*, 101 F.3d at 1385 (citing *Thornburgh v. Abbott*, 490 U.S. 401, 417 (1989)). Throughout this litigation, Plaintiff has maintained that he can send correspondence to non-inmates by mail through the United States Postal Service. (Docs. 28, p. 12; 64-3, pp. 73, 78, 80; 80, pp. 4, 16, 19). Indeed, Plaintiff actually exercised the First Amendment right at issue in this case when he successfully sent through the mail handwritten copies of the three censored emails he attempted to send to Ms. Knott. (Doc. 80, p. 4). Although Plaintiff denies that he sent a handwritten duplicate of the withheld email to the Aleph Institute, he does not contend that his access to the mail was hindered at that time. (*Id.*, p. 5). Accordingly, there is no genuine dispute that Plaintiff had alternative means of communicating with persons outside the prison.

Third, accommodation of Plaintiff's asserted right would impact prison staff, other inmates, and the allocation of prison resources. The expansion of Plaintiff's email-recipient list to include all possible recipients of forwarded email is unrealistic, given the indeterminate number of potential recipients of the message and the increased expenditure of resources required to complete such a task. *See Pope*, 101 F.3d at 1385 ("[C]onducting a background investigation for each individual on an inmate's phone list requires a considerable expenditure of time by prison staff."). The GDC would similarly be required to expend additional resources to investigate each reference to another inmate in a given email to determine whether the

information poses a potential threat. Because Plaintiff's requested accommodations will have a significant ripple effect on prison staff, particular deference should be accorded prison officials' discretion in implementing the relevant regulations. *See Turner v. Safley*, 482 U.S. 78, 90 (1987).

Fourth, and finally, the challenged policies were not an exaggerated response to prison officials' security concerns. In *Pesci v. Budz*, the Eleventh Circuit upheld a total ban on a monthly publication critical of the prison system. 935 F.3d 1159, 1171 (11th Cir. 2019). Here, in contrast, Plaintiff's email correspondence was not completely restricted. Rather, Plaintiff was permitted to correspond via email with non-inmates so long as the content of the emails conformed to certain restrictions. In fact, of the 112 emails Plaintiff sent between 2017 and 2018, only four were censored for failing to comply with prison policies. (Doc. 64-4, ¶¶ 23, 26, 31). On other occasions when emails were flagged and reviewed for compliance, the emails were generally released after a finding that the flagged content, often a key word such as "methamphetamine" or "gang," was used in an innocuous context. (Doc. 64-2, ¶¶ 27–29). Neither the policies restricting the content of outgoing emails nor the enforcement of those policies suggest an "exaggerated response" to the GDC's security concerns.

In sum, after consideration of the four *Turner* factors, all of which weigh in Defendants' favor, the challenged email policies are valid and reasonably related to legitimate penological interests. Defendants are, therefore, entitled to summary judgment. Even if summary judgment is improper, Plaintiff has not alleged that he suffered a physical injury as a result of Defendants' actions; therefore, his relief is limited to nominal damages only. *See* 42 U.S.C. § 1997e(e); *Brooks v. Warden*, 800 F.3d 1295, 1307-08 (11th Cir. 2015). Furthermore, since the prospective relief requested is neither narrowly drawn nor the least intrusive means necessary to correct the alleged constitutional violation, Plaintiff is not entitled to injunctive and declaratory relief. 18

U.S.C. § 3626(a)(1).

## CONCLUSION

After careful consideration, it is **RECOMMENDED** that Defendants' motion for summary judgment be **GRANTED**, and that judgment be entered in their favor.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to this Recommendation, or seek an extension of time to file objections, WITHIN FOURTEEN (14) DAYS after being served with a copy thereof. The District Judge will make a de novo determination of those portions of the Recommendation to which objection is made. All other portions of the Recommendation may be reviewed for clear error.

The parties are further notified that, pursuant to Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice."

**SO RECOMMENDED**, this 16th day of July, 2020.


s/ Charles H. Weigle
Charles H. Weigle
United States Magistrate Judge