IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| RALPH HARRISON BENNING, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Case No. 5:18-cv-00087-TES-CHW |
| | : | |
| COMMISSIONER GREGORY C DOZIER, | : | |
| *et al.*, | : | Proceedings Under 42 U.S.C. § 1983 |
| | : | Before the U.S. Magistrate Judge |
| Defendants. | : | |
| | : | |

## REPORT AND RECOMMENDATION

On July 16, 2020, a Report and Recommendation (Doc. 84) was entered, recommending that Defendant's Motion for Summary Judgment (Doc. 64) be granted. Plaintiff filed an objection to the Recommendation, in which he argues that the Recommendation failed to address his due process claim and that the Recommendation erroneously considered his First Amendment claim under the analysis of *Turner v. Safley*, 482 U.S. 78 (1987), rather than the analysis of *Procunier v. Martinez*, 416 U.S. 396, 417 (1974). Upon review of the objection, the Court has recommitted this matter for the consideration of a possible due process claim advanced by Plaintiff and further consideration of Plaintiff's First Amendment claims. Further review shows that Plaintiff's objections are without merit, and for the reasons set forth below, it is **RECOMMENDED** that Defendants' Motion for Summary Judgment (Doc. 64) be **GRANTED**.

    **(a)**    **Background**

This action focuses on four e-mails Plaintiff sent in late 2017 and early 2018. Three of those e-mails were addressed to Plaintiff's sister, Ms. Knott, and a fourth e-mail was addressed to

1

The Aleph Institute, an organization that, among other things, supplies religious provisions to prisoners.

Plaintiff's e-mails never reached their intended recipients. The e-mails were censored, meaning they were intercepted and read and their contents were found to violate a policy barring requests by prisoners that their e-mails be forwarded to persons other than the direct recipient. The parties dispute whether the pertinent policy, No. 204.10, was or remained in place "at all time[s] relevant to this lawsuit." (Wallace Decl., Doc. 64-4, p. 3, ¶ 8). *Cf.* (Doc. 80, p. 2) ("Plaintiff den[ie]s that GDC SOP 204.10 has been in effect at all times relevant to this Complaint"). Hence, it is not entirely clear that Plaintiff is entitled to seek equitable relief. *See, e.g.*, *Summit Med. Assoc., P.C. v. Pryor*, 180 F.3d 1326, 1336 (11th Cir. 1999) ("Under the doctrine of *Ex Parte Young* … there is a long and well-recognized exception to [Eleventh Amendment immunity] for suits against state officers seeking *prospective* equitable relief to end *continuing* violations of federal law").

### (b) Plaintiff abandoned his Due Process claim

Plaintiff's possible due process claim was summarily addressed in a footnote in the original Recommendation on the Defendants' pending motion for summary judgment. Specifically, the Recommendation indicated that Plaintiff's possible due process claim should be deemed abandoned for the following reasons:

> Plaintiff's attempt to add due process and other claims in his response to Defendants' motion for summary judgment is too late. In the Eleventh Circuit, "a plaintiff cannot amend his complaint through argument made in his brief in opposition to the defendant's motion for summary judgment." *Miccosukee Tribe of Indians of Fla. v. United States*, 716 F.3d 535, 559 (11th Cir. 2013) (citing *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004)). Notably, Plaintiff did not object to the Court's screening Order and Recommendation.

> (Doc. 16, p. 1). Accordingly, only the First Amendment claim permitted to proceed at screening is properly before the Court.

(Doc. 84, p. 2, n. 2)

Plaintiff's due process claim can still be deemed abandoned for three overlapping reasons: (1) because Plaintiff failed to provide adequate notice of this claim to Defendants or to the Court; (2) because the parties did not have adequate opportunity to examine this claim through discovery; and (3) because Plaintiff did not diligently pursue this claim.

First, Plaintiff's attempt to raise a due process claim in his response to a motion for summary judgment raises a problem of notice to the Defendants. A separate due process claim was not explicitly stated in the Complaint (Doc. 1) or Amended Complaint (Doc 28). Neither the Complaint nor the Amended Complaint stated any specific legal basis for relief; both simply set forth factual allegations related to censorship of email correspondence and requests for declaratory relief. There is no reference anywhere in the Complaint or Amended Complaint to 42 U.S.C. § 1983, the First Amendment, the Fourteenth Amendment, or the term "due process." At most, Plaintiff alleged in paragraphs 10 and 11 of his statement of claims that he "was not given any notice that his outgoing email correspondences had been censored" and that he "was not given an opportunity to respond to or challenge the censorship of his outgoing email correspondence." (Doc. 1, p. 11; Doc. 28, pp. 5, 11).

On screening pursuant to 28 U.S.C. § 1915A(a), the Court construed the Complaint to state only a First Amendment claim against Defendant Dozier in his individual capacity and recommended dismissal of all other claims. Plaintiff had the opportunity to object to the screening Order and Recommendation but did not do so. In fact, Plaintiff stated that he had no objection to the screening Order and Recommendation. (Doc. 12, p. 1). Plaintiff filed an Amended Complaint (Doc. 28) several months after the screening Order and Recommendation was adopted, which

named Defendants Margaret Patterson and Jennifer Edgar, who had previously been identified only as "inmate email censor." The Amended Complaint essentially restated the factual allegations of the original Complaint, again with no reference to due process or the Fourteenth Amendment. A later Amended Complaint (Doc. 28)

Plaintiff now asserts, in his objection to the pending Recommendation on the Defendants' motion for summary judgment, that his "due process claims were not dismissed [and] therefore there was no reason for Plaintiff to file an objection." (Doc. 87-2, p. 2). This is an attempt by Plaintiff to cure his lack of diligence throughout the proceeding two-and-a-half years of litigation. Even if Plaintiff could state or make out a due process claim, Plaintiff did not afford the Defendants "adequate notice of this claim so that [they] could marshal evidence to demonstrate" that Plaintiff received adequate process. *Geter v. Baldwin State Prison*, — F.3d — , 2020 WL 5417545 at \*6 (Sept. 10, 2020). As a result, Plaintiff's possible due process claim should, at this late stage in the proceedings, be deemed abandoned and dismissed.

Second, it is not clear that the parties, including Plaintiff, have conducted any discovery relating to issues of notice of e-mail censorship or to the mechanisms, if any, for allowing prisoners to protest the censorship of their e-mail. Discovery in this case was extensive and contested. Plaintiff filed a Motion to Compel (Doc. 39), which was largely granted following a contentious hearing. Plaintiff also filed a Motion for Contempt (Doc. 61), alleging that Defendant had failed to comply with the Court's Order compelling production. To the extent Plaintiff now requests time to conduct further discovery pursuant to Federal Rule of Civil Procedure 56(d)(2), Plaintiff's request should be denied "due to inactivity or delay." *Estate of Todashev by Shibly v. United States*, 815 F. App'x 446, 454 (11th Cir. 2020).

Third and finally, although *pro se* filings are liberally construed, *pro se* parties are "subject to the relevant law and rules of court, including the Federal Rules of Civil Procedure." *Moon v. Newsome*, 863 F.2d 835, 838 (11th Cir. 1989). Both Rule 41(b) and this Court's screening order impose a diligent prosecution requirement, and the record shows that Plaintiff did not fulfill his duty diligently to prosecute a due process claim in this action. Similarly, insofar as Plaintiff seeks to reinstitute a due process claim through a late-stage amendment, that amendment is improper on grounds of "undue delay." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

**(c)** **Plaintiff's Due Process Claim is not supported on the merits**

Even if Plaintiff had not abandoned his due process claim, Defendants would be entitled to summary judgment on that claim.

First, as the original Report and Recommendation noted, prisoners do not have a protected liberty interest in communication by e-mail sufficient to trigger due process protections. While the Supreme Court's decision in *Procunier v. Martinez*, 416 U.S. 396, 417 (1974), identified a liberty interest in prisoners' "communication by letter," *Martinez*'s holding has been strictly limited to the facts of that case. *See, e.g.*, *Perry v. Sec'y, Dep't of Corrs.*, 664 F.3d 1359, 1364 (11th Cir. 2011) ("the cases that follow *Martinez* erode the high standard it set and, instead, show greater deference to prison administrators"). *Martinez* does not, therefore, stand for the proposition that prisoners have a protected liberty interest in communication by e-mail sufficient to trigger due process protections. *See, e.g.*, *Solan v. Zickefoose*, 530 F. App'x 109, 111 (2013) ("Solan has not identified any property or liberty interest implicated by Warden Zickefoose's refusal to give him access to e-mail"). Plaintiff's mere citation to *Martinez* fails to demonstrate a protected liberty interest in communication by e-mail sufficient to support a due process claim.

Second, the facts of this case present a more complicated issue than simply whether, in the abstract, prisoners' e-mail communications may sometimes be safeguarded by the due process clause. The record shows that after Plaintiff's e-mails were censored (that is, when they were not forwarded to the intended outside recipients), Plaintiff was permitted to send precisely the same communications to the intended recipients through letters sent by the mail. *See* (Recommendation, Doc. 84, p. 8).[1] Therefore, the question raised in this case is whether *Martinez*'s holding might extend to prisoner e-mail communications when those e-mail communications are supplemental to, rather than a replacement for, ordinary mail communications.

Moreover, the record shows that Plaintiff's ability to access the equipment enabling his use of e-mail communication was contractual, meaning that it was based upon Plaintiff's assent to follow certain "rules and regulations concerning" the pertinent device, a Georgia Offender Alternative Learning or "GOAL" device. (Wallace Decl., Doc. 64-4, p. 3, ¶¶ 6–8). As a result, even if Plaintiff has demonstrated a liberty interest in e-mail communications triggering certain due process protections, then this case presents the added issue of whether Plaintiff's due process right was "consensually relinquished" by his assent to the GOAL rules and regulations. *See Estelle v. Williams*, 425 U.S. 501, 513 (1976). These twinned complications — supplemental means of communication and the contractual relinquishment of Plaintiff's due process rights — serve to bolster the conclusion originally reached at the screening process, namely, that Plaintiff does not state a due process claim.

---

[1] On this point, the original Recommendation reads, in full, as follows:

> Indeed, Plaintiff actually exercised the First Amendment right at issue in this case when he successfully sent through the mail handwritten copies of the three censored emails he attempted to send to Ms. Knott. (Doc. 80, p. 4). Although Plaintiff denies that he sent a handwritten duplicate of the withheld email to the Aleph Institute, he does not contend that his access to the mail was hindered at that time.

(Doc. 84, p. 8)

Third and finally, even if *Martinez*'s "liberty interest" holding could be extended to e-mail communications, no clearly established caselaw has yet to do so. Although the Defendants' ability to raise the defense of qualified immunity "at the earliest available opportunity"[2] has been thwarted due to Plaintiff's lack of diligence and failure to provide adequate notice of his due process claim, as discussed above, the Court may, if necessary, raise that defense *sua sponte* on the Defendants' behalf. *See Lillo ex rel. Estate of Lillo v. Bruhn*, 413 F. App'x 161, 162 (11th Cir. 2011) ("there was no error on the part of the district court when it *sua sponte* raised the issue of qualified immunity for the firefighters"). Therefore, even if the Court determines that Plaintiff states a due process claim under *Martinez*, the Defendants are nevertheless entitled to qualified immunity, and hence, Plaintiff's due process claim should be dismissed.

        **d.**      **<u>The prison's email restrictions were reasonable under *Turner v. Safley*</u>**

In reviewing Plaintiff's First Amendment claims, the original Recommendation correctly applied the analysis required under *Turner v. Safley*, 482 U.S. 78 (1987). As noted above, the slightly narrower analytic framework of *Procunier v. Martinez* has been limited to its facts, specifically to regulation of outgoing written communication by mail. *Perry v. Sec'y, Dep't of Corrs.*, 664 F.3d at 1365 (citing *Thornburgh v. Abbott*, 490 U.S. 401, 413-14 (1989)). Access to electronic mail is distinguishable from access to the post. As one district court has observed:

> assuming that the free speech clause of the First Amendment requires prisons to permit communication between prisoners and persons outside the prison, it does not follow that the First Amendment requires that the government provide telephones, videoconferencing, email, or any of the other marvelous forms of technology that allow instantaneous communication across geographical distances.

---

[2] *See Pearson v. Callahan*, 555 U.S. 223, 231–32 (2009) ("[T]he driving force behind [the] creation of the qualified immunity doctrine was a desire to ensure that insubstantial claims against government officials will be resolved prior to discovery. Accordingly, we repeatedly have stressed the importance of resolving immunity questions at the earliest possible stage in litigation.") (internal citations and punctuation omitted).

7

*Holloway v. Magness*, No. 5:07-cv-88 JLH-BD, 2011 WL 204891, 7 (E.D.Ark. Jan. 21, 2011), *aff'd*, 666 F.3d 1076 (8th Cir. 2012).

The restrictions placed on the use of email in this case are comparable to the restrictions placed on the use of the telephone in *Pope v. Hightower*, 101 F.3d 1382 (11th Cir. 1996). In *Pope*, the Court of Appeals applied the factors from *Turner* to determine that prison telephone restrictions[3] did not violate the plaintiff's First Amendment rights, holding that the restrictions were reasonably related to the legitimate penological interests of curtailing criminal activity and harassment of judges and jurors.

In comparison, email presents greater risks than the telephone, as it affords a much broader scope of communication. No court has held that prison inmates have a constitutional right to access email, and many, if not most, prisoners do not have such access. Access to email, like access to the telephone or other advanced communication technologies, is a privilege that is above and beyond the ordinary right to correspondence. Plaintiff's claims related to restrictions on email correspondence are therefore properly considered under the analysis outlined in *Turner v. Safley*, 482 U.S. 78 (1987), not under the narrower standard of *Martinez*.

As *Turner* holds, when a prison regulation or policy impinges on an inmate's constitutional rights, "the regulation is valid if it is reasonably related to legitimate penological interests." *Turner*, 482 U.S. at 89. Four factors are relevant to, and serve to channel, the reasonableness inquiry:

> (1) whether there is a 'valid, rational connection' between the regulation and a legitimate governmental interest put forward to justify it; (2) whether there are alternative means of exercising the asserted constitutional right that remain open to the inmates; (3) whether and the extent to which accommodation of the asserted right will have an impact on prison

---

[3] The prison limited the number of people to whom inmates could place telephone calls, allowing each inmate to designate no more than ten individuals on their telephone calling lists. Prison officials conducted a background check on the individuals listed to ensure that they did not have a criminal record. A computer system automatically blocked any calls to persons not on the calling list.

staff, inmates, and the allocation of prison resources generally; and (4) whether the regulation represents an 'exaggerated response' to prison concerns.

*Pesci v. Budz*, 935 F.3d 1159, 1166 (11th Cir. 2019) (quoting *Pope v. Hightower*, 101 F.3d 1382, 1384 (11th Cir. 1996)); *see Turner*, 482 U.S. at 89–91.

An important principle to consider when evaluating the *Turner* factors is the deference accorded by federal courts to state prison authorities, given the "inordinately difficult undertaking" of prison administration and in light of separation of powers concerns. *Turner*, 482 U.S. at 84–85. "The distribution of burdens between the parties also reflects the difficulties of prison management from the bench: the burden 'is not on the State to prove the validity of prison regulations but on the prisoner to disprove it.'" *Pesci*, 935 F.3d at 1166 (quoting *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003)).

In this case, a reasonable jury could not find that the prison's email policy violated Plaintiff's First Amendment rights. First, the regulation and the governmental interest asserted by Defendants to justify the policy share a valid, rational connection. To satisfy *Turner*'s first factor, Defendants need not "present evidence of an actual security breach." *Prison Legal News v. Sec'y, Fla. Dep't of Corr.*, 890 F.3d 954, 968 (11th Cir. 2018). Instead, to accord state prison authorities the appropriate deference, "prison officials must be able to 'anticipate security problems and . . . adopt innovative solutions' to those problems to manage a prison effectively." *Id.* (emphasis omitted) (quoting *Turner*, 482 U.S. at 89). "This factor is the most important of the four, and indeed must be satisfied if the policy is to survive." *Pesci*, 935 F.3d at 1167.

The parties do not dispute that the four emails at issue violated the GDC Standard Operating Procedure, specifically Policy 204.10, which governs inmates' use of the Georgia Offender Alternative Learning, or GOAL, mobile device and the J-Pay Kiosk, through which

9

offenders may send and receive emails and engage in other permitted electronic activities.[4] (Defendants' SMF, Doc. 64-2, ¶¶ 31–47; Plaintiff's SMF, Doc. 80, pp. 4–5). Policy 204.10 prohibits, among other things, inmates' requesting that emails be forwarded, sent, or mailed to persons other than the original recipient and prohibits requesting or sending information on behalf of or about another offender. (Doc. 64-4, pp. 14–15). There is no dispute that the three emails sent to Ms. Knott on September 24 and October 9, 2017, respectively, violated the former prohibition and that the 2018 email sent to the Aleph Institute violated the latter. (Docs. 64-2, ¶¶ 33–35, 40, 42, 46; 80, pp. 4–5). In addition, inmates are prohibited from contacting persons who have not been screened by the GDC's security personnel. (Doc. 64-2, ¶¶ 6–7). Pursuant to prison policy, Plaintiff is only permitted to communicate via email with persons who have passed the necessary background checks. (*Id.*, ¶ 7).

Defendants' asserted interest in maintaining the above policies is legitimate, valid, and rationally connected to those policies. Defendants assert that Plaintiff's request to Ms. Knott to forward his email to third parties posed the security concern that he was attempting to communicate indirectly with persons who were not cleared by prison security personnel and who may have had a record of criminal activity. (Doc. 64-1, p. 11). They contend that the policy was designed to "curb criminal activity and ensure security," (*id.*, p. 12), by "preventing possible threats to citizens and prison personnel." (Doc. 64-4, ¶ 28). The asserted interest in reducing criminal activity and threats to the public and prison officials is legitimate, *see Pope v. Hightower*,

---

[4] Plaintiff denies that Policy 204.10 was in effect "at all times relevant to th[e] complaint," (Doc. 80, p. 3), but fails to make a showing sufficient to contradict evidence, noted on the policy itself, that the policy was effective August 15, 2017, just over a month before the first email at issue was sent, (Decl. of Richard Wallace, Doc. 64-4, ¶ 8; Doc. 64-4, pp. 10–21). In support, Plaintiff cites to a different policy, Policy 227.06. (Doc. 80, p. 4). That policy, however, was effective February 26, 2018, twenty days after the final email at issue in this case, the February 6, 2018 email to the Aleph Institute, was sent. (Doc. 80-2). Moreover, that policy governs inmates' receipt of mail, not outgoing email. (*Id.*). Policy 227.06, therefore, does not apply to the circumstances of this case.

101 F.3d 1382, 1385 (11th Cir. 1996) ("Reduction of criminal activity and harassment qualifies as a legitimate governmental objective."), and rationally related to the restrictions imposed on Plaintiff's outgoing emails, *see id.* ("The connection between that objective and the use of a ten-person calling list is valid and rational because it is not so remote as to render the prison telephone policy arbitrary or irrational."). For similar reasons, the governmental interest asserted to justify the ban on including information about other inmates in email correspondence is legitimate and rationally connected to the regulation. According to Defendants, identifying information sent to third parties threatens the security of prison staff and other inmates. (Docs. 64-1, p. 11; 64-4, ¶ 29). As stated above, the prevention of threats and harassment is a legitimate governmental goal, *see Pope*, 101 F.3d at 1385, and Plaintiff has not shown otherwise, *Pesci*, 935 F.3d at 1166 (discussing the plaintiff's burden under *Turner*). Again, an actual breach of security need not occur before a regulation can be deemed rationally related to a legitimate objective. *See Prison Legal News v. Sec'y, Fla. Dep't of Corr.*, 890 F.3d 954, 968 (11th Cir. 2018).

In sum, regarding *Turner*'s first factor, there is no genuine issue of material fact left to be tried. Defendants have presented legitimate governmental interests in support of the challenged policies, and Plaintiff has not met his burden of disproving those interests or the valid, rational connection between those interests and the policies at issue.

Second, the undisputed evidence shows that there were alternative means of exercising the First Amendment right to communicate with non-inmates available to Plaintiff. When considering *Turner*'s second factor, "the Supreme Court has instructed that the right must be viewed sensibly and expansively." *Pope*, 101 F.3d at 1385 (citing *Thornburgh v. Abbott*, 490 U.S. 401, 417 (1989)). Throughout this litigation, Plaintiff has conceded that he can send correspondence to non-inmates by mail through the United States Postal Service. (Docs. 28, p. 12; 64-3, pp. 73, 78, 80; 80, pp. 4,

16, 19). Indeed, Plaintiff actually exercised the First Amendment right at issue in this case when he successfully sent through the mail handwritten copies of the three censored emails he attempted to send to Ms. Knott. (Doc. 80, p. 4). Although Plaintiff denies that he sent a handwritten duplicate of the withheld email to the Aleph Institute, he does not contend that his access to the mail was hindered at that time. (*Id.*, p. 5). Accordingly, there is no genuine dispute that Plaintiff had alternative means of communicating with persons outside the prison.

Third, accommodation of Plaintiff's asserted right would impact prison staff, other inmates, and the allocation of prison resources. The expansion of Plaintiff's email-recipient list to include all possible recipients of forwarded email is unrealistic, given the indeterminate number of potential recipients of the message and the increased expenditure of resources required to complete such a task. *See Pope*, 101 F.3d at 1385 ("[C]onducting a background investigation for each individual on an inmate's phone list requires a considerable expenditure of time by prison staff."). The GDC would similarly be required to expend additional resources to investigate each reference to another inmate in a given email to determine whether the information poses a potential threat. Because Plaintiff's requested accommodations will have a significant ripple effect on prison staff, particular deference should be accorded prison officials' discretion in implementing the relevant regulations. *See Turner v. Safley*, 482 U.S. 78, 90 (1987).

Fourth, and finally, the challenged policies were not an exaggerated response to prison officials' security concerns. In *Pesci v. Budz*, the Eleventh Circuit upheld a total ban on a monthly publication critical of the prison system. 935 F.3d 1159, 1171 (11th Cir. 2019). Here, in contrast, Plaintiff's email correspondence was not completely restricted. Rather, Plaintiff was permitted to correspond via email with non-inmates so long as the content of the emails conformed to certain restrictions. In fact, of the 112 emails Plaintiff sent between 2017 and 2018, only four were

censored for failing to comply with prison policies. (Doc. 64-4, ¶¶ 23, 26, 31). On other occasions when emails were flagged and reviewed for compliance, the emails were generally released after a finding that the flagged content, often a key word such as "methamphetamine" or "gang," was used in an innocuous context. (Doc. 64-2, ¶¶ 27–29). Neither the policies restricting the content of outgoing emails nor the enforcement of those policies suggest an "exaggerated response" to the GDC's security concerns.

In sum, after consideration of the four *Turner* factors, all of which weigh in Defendants' favor, the challenged email policies are valid and reasonably related to legitimate penological interests. Defendants are, therefore, entitled to summary judgment. Even if summary judgment is improper, Plaintiff has not alleged that he suffered a physical injury as a result of Defendants' actions; therefore, his relief is limited to nominal damages only. *See* 42 U.S.C. § 1997e(e); *Brooks v. Warden*, 800 F.3d 1295, 1307-08 (11th Cir. 2015). Furthermore, since the prospective relief requested is neither narrowly drawn nor the least intrusive means necessary to correct the alleged constitutional violation, Plaintiff is not entitled to injunctive and declaratory relief. 18 U.S.C. § 3626(a)(1).

## **CONCLUSION**

For the reasons addressed herein, it is **RECOMMENDED** that Plaintiff's possible due process claim be **DISMISSED without prejudice**. Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to this Recommendation, or seek an extension of time to file objections, WITHIN FOURTEEN (14) DAYS after being served with a copy thereof. The District Judge will make a de novo determination of those portions of the Recommendation to which objection is made. All other portions of the Recommendation may be reviewed for clear error.

The parties are further notified that, pursuant to Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice."

**SO RECOMMENDED**, this 13th day of October, 2020.

s/ Charles H. Weigle
Charles H. Weigle
United States Magistrate Judge