**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**MACON DIVISION**

| | |
|---|---|
| **RALPH HARRISON BENNING,** | |
| *Plaintiff,* | |
| **v.** | **CIVIL ACTION NO.** |
| **COMMISSIONER GREGORY C. DOZIER,** *et al.,* | **5:18-cv-00087-TES-CHW** |
| *Defendants.* | |

**ORDER ADOPTING THE UNITED STATES MAGISTRATE JUDGE'S**
**REPORT AND RECOMMENDATION**

Should censorship of prisoner email be treated the same as censorship of traditional prisoner mail when deciding whether that censorship violates the First Amendment or the Fourteenth Amendment's guarantee of procedural due process? This case requires the Court to grapple with that question. And it's a much tougher question than it appears at first blush. After considerable research, the Court agrees with the Magistrate Judge that email is just different. Accordingly, the Court **ADOPTS**

the Magistrate Judge's Report & Recommendation ("R&R") that the Defendants'

Motion for Summary Judgment be granted and Benning's case be dismissed.[1]

## BACKGROUND

Ralph Harrison Benning ("Benning"), an inmate at Wilcox State Prison,

complains that the Georgia Department of Corrections ("GDC") censored the following

four emails he sent through the inmate email service, known as "JPay," to persons

outside of the prison:

- a September 24, 2017, email Benning sent to his sister, Ms. Elizabeth Anne
  Knott, intercepted by Defendant Patterson,

- two emails Benning sent on October 9, 2017, to his sister, Ms. Elizabeth
  Anne Knott, intercepted by Defendant Edgar, and

- a February 6, 2018, email Benning sent to the Aleph Institute, intercepted
  by Defendant Patterson. [Doc. 28, p. 5].

Benning filed suit, claiming that none of the four emails reached their intended

recipient because the GDC withheld them because their content violated GDC policy,

and the Commissioner implemented this policy. [Doc. 1, p. 11]; [Doc. 28, pp. 5, 11–12].

---

[1] At the outset, the Court finds it necessary to address Benning's Motion for Investigation of Harassment and Intimidation [Doc. 107] filed on April 22, 2021. Benning's allegations, if true, should concern the Defendants, Georgia's Governor and Attorney General, and this district's Acting United States Attorney as much as it disturbed the Court.  While the Court **DENIES** Plaintiff's "motion" [Doc. 107] because district courts don't investigate, the Court will ensure that Benning's allegations are forwarded to the Acting United States Attorney for the Middle District of Georgia and Georgia's Attorney General.

The particular policy—SOP 204.10—is intended to curb criminal activity and ensure security by preventing prisoner threats to citizens and prison personnel. [Doc. 64-1, pp. 11–12]; [Doc. 64-4, ¶ 28]. Relevant here, SOP 204.10 prohibits inmates from requesting that emails be sent, forwarded, or mailed to persons other than the original recipient. [Doc. 64-4, pp. 14–15]. SOP 204.10 also prohibits inmates from requesting information about another offender. [*Id*.]. The parties do not dispute that Benning's four withheld emails violated this policy. [Doc. 80, pp. 4–5].

The magistrate judge screened Benning's claims pursuant to 28 U.S.C. § 1915A(a). [Doc. 7]. The magistrate judge found that Benning sought relief under 42 U.S.C. § 1983 and  could "proceed with his claims against Defendant Dozier in his official capacity." [*Id*. at pp. 1, 7]. Later, the court allowed Benning to add Patterson and Edgar as defendants via an amended complaint. [Doc. 28].

Benning claimed compensatory damages of $0.35 per censored email, $10 in nominal damages from each defendant, $1,000 in punitive damages from each defendant, and litigation costs. [Doc. 28, p. 13]. Benning also sought declaratory and injunctive relief. [*Id*. at pp. 6, 13]. Specifically, Benning asked the Court to:

1. Declare that email correspondence be considered the same as written/paper correspondence.
2. Declare that Plaintiff has a right to be notified when email correspondence is censored.
3. Declare that Plaintiff has a right to respond to any decision to censor email correspondence before the decision is finalized.

3

4.   Declare that Plaintiff has a right to written reason(s) for any decision
     to censor email correspondence.

     . . .

11.  Order the defendants to not limit the length of outgoing emails.
12.  Order the defendants to allow Plaintiff to email anyone except for
     persons who have specifically requested to be restricted to Plaintiff.
13.  Order the defendants to not impose restrictions on the use of
     Plaintiff's electronic communications by non-incarcerated persons.

[Doc. 28, pp. 6, 13].

Defendants filed a Motion for Summary Judgment [Doc. 64], arguing that

Benning has no constitutional right to communicate via email, that his use of the prison

email system is a privilege and not a right, and the GDC preventing Benning from using

his email on three occasions is not a constitutional violation. [Doc. 64-1, pp. 6–9].

Defendants also argue that even if Benning has a constitutional right to communicate

via email, the abridging of that right passes the applicable level of constitutional

scrutiny, and that Defendants Edgar and Patterson are entitled to qualified immunity

for the suits against them in their individual capacities. [*Id*. at pp. 9–17]. Lastly,

Defendants argue that Benning is only entitled to nominal damages and is not entitled

to injunctive relief. [*Id*. at 17–19].

Benning responded to Defendants' Motion for Summary Judgment, arguing that

electronic and paper correspondence should not be treated differently for the purposes

of a First Amendment analysis, that due process should be provided when a prisoner's

email correspondence is restricted, that limiting the length of email correspondence is unconstitutional, that it is unconstitutional for the Defendants to restrict the speech of non-incarcerated persons, and that the applicable law is clearly established for the purposes of qualified immunity. [Doc. 80]; [Doc. 80-1].

The Magistrate Judge recommended that Defendants' Motion for Summary Judgment be granted. [Doc. 84]. After initially reviewing Benning's objections [Doc. 87] to the Magistrate Judge's R&R, the Court recommitted the matter to the Magistrate Judge "to consider Benning's Procedural Due Process claim in the manner he sees fit." [Doc. 89, p. 6]. The Magistrate Judge then issued another R&R [Doc. 90] considering Benning's procedural due process claim and elaborating on his First Amendment analysis. After granting Benning a request for extension of time to file objections, the Court did not timely receive objections from Benning and adopted the R&R after reviewing for clear error pursuant to 28 U.S.C. § 636(b). [Doc. 92]; [Doc. 93]. Judgment was entered against Benning. [Doc. 94]. Benning again requested more time to file objections and the Magistrate Judge denied this request. [Doc. 95]; [Doc. 96]. Benning then moved for relief from the judgment pursuant to Rule 60(b). [Doc. 97]. The Court granted this motion and ordered the judgment entered against Benning to be set aside. [Doc. 98]. Benning moved to exceed the page limit for his objections (and filed objections exceeding the page limit), and the Court denied that request and ordered him

to submit objections conforming with the twenty-page limit. [Doc. 100]; [Doc. 101];

[Doc. 102].

Defendants then filed a response [Doc. 103] to Benning's (now-stricken and over-the-page-limit) objections [Doc. 101]. Benning then re-filed his objections [Doc. 104] and arguments [Doc. 105] within the applicable page limit.[2] Benning also filed a reply [Doc. 106] to the Defendants' response.

## DISCUSSION

### A.   Benning's Claims for Injunctive Relief

Benning seeks injunctive relief against the Defendants. *See* [Doc. 28, pp. 6, 13 (Asking the Court to order Defendants to not limit length of emails, to not limit who Benning may email, and to not place restrictions on what the email recipients do with Benning's emails)]. The Magistrate Judge allowed Benning's claim against the Commissioner of the GDC to proceed under the doctrine of *Ex Parte Young* because he asked for injunctive relief for ongoing violations of his federal rights against the Commissioner in his official capacity. [Doc. 7]. When the Magistrate Judge allowed the claim for injunctive relief to proceed against the Commissioner, he did so because Benning alleged the violation was done pursuant to a "formal policy" or "custom." [*Id*.].

---

[2] Benning filed a list of objections [Doc. 104], and then a "brief in support" of objections [Doc. 105]. The brief contains the objections and supporting arguments and is within the twenty-page limit (not counting attached exhibits).

In other words, the Magistrate Judge determined that Benning requested injunctive relief to address a continuing constitutional violation.

*Ex parte Young*, 209 U.S. 123 (1908), provides an exception to the Eleventh Amendment for "suits against state officers seeking prospective equitable relief to end continuing violations of federal law." *Florida Ass'n of Rehab. Facilities, Inc. v. State of Fla. Dep't of Health & Rehab. Servs.*, 225 F.3d 1208, 1219 (11th Cir. 2000) (citation omitted). *Ex parte Young's* doctrine is only available when the plaintiff seeks prospective injunctive relief. *Id*. It does not apply, however, when a federal law has been violated at one time or over a period of time in the past. *Id*. A plaintiff may not use the doctrine to adjudicate the legality of past conduct. *Summit Med. Assocs., P.C. v. Pryor*, 180 F.3d 1326, 1337 (11th Cir. 1999).

Benning concedes that at least some of the violations he seeks injunctive relief to address are not ongoing. Benning states in his latest objections that the Defendants have removed the limit on who Benning may email, and have removed the requirement that those Benning emails have undergone background checks. *See* [Doc. 105, p. 19]. This makes moot Benning's request that the Court "Order the defendants to allow Plaintiff to email anyone except for persons who have specifically requested to be restricted to Plaintiff," [Doc. 28, p. 13], and that claim is therefore **DENIED**.

Further, to the extent Benning's concessions do not moot his other two requests for injunctive relief—that the Court "Order the defendants to not limit the length of outgoing emails," and "Order the defendants to not impose restrictions on the use of Plaintiff's electronic communications by non-incarcerated persons"—do not conform with the limits on injunctive relief imposed by the Prison Litigation Reform Act.

> Prospective relief in any civil action with respect to prison conditions shall extend no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs. The court shall not grant or approve any prospective relief unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right. The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the relief.

18 U.S.C. § 3626(a)(1). As explained below, and as Benning himself concedes, he has no stand-alone right to email. Nor does Benning point to any law that would require him to have access to emails over a certain length. Because Benning can point to no federal right to send an email over the page limit, this claim for injunctive relief is due to be **DENIED**. Further, Benning's request that the Court order Defendants to remove any "restrictions on the use of Plaintiff's electronic communications by non-incarcerated persons" is extremely sweeping and broad, and does not conform to the "narrowly drawn" or "least intrusive means" requirements of § 3626(a)(1). That claim is therefore **DENIED**.

Therefore, since any possible claim for injunctive relief related to ongoing conduct against the Commissioner is denied as either moot or as a violation of § 3626(a)(1), all claims against the Commissioner fail. See *Ex parte Young*, 209 U.S. 123 (1908).

Further, the claims for injunctive relief against Defendants Patterson and Edgar also fail for the same mootness and § 3626(a)(1) reasons explained above. Therefore, only Benning's claims for nominal damages, compensatory damages, and punitive damages against these remaining defendants are left.[3]

### B.      Remaining Claims Against Defendants Patterson and Edgar

Because the remaining claims against Defendants Patterson and Edgar are for damages, the doctrine of qualified immunity may shield them from any liability to Benning. Qualified immunity will protect Patterson and Edgar if they were acting within the scope of their discretionary authority, and if Benning can demonstrate that they violated one of his clearly established constitutional rights. *See Smith v. Ford*, 488 F. Supp. 1314, 1323 (M.D. Ga. Sept. 22, 2020). It is not disputed—and plainly obvious— that Patterson and Edgar were acting within the scope of their discretionary authority. Therefore, whether Benning's claims against Patterson and Edgar prevail will hinge on whether they violated (1) one of his constitutional rights that was (2) clearly established.

---

[3] Benning's requests for declaratory relief are all questions that must be answered as the Court considers the merits of Benning's claims against Defendants Patterson and Edgar.

*Id*. The Court will first consider whether Benning has established that Edgar or

Patterson violated his rights guaranteed by the First Amendment or the Due Process

Clause. Then, the Court will consider whether either of those rights were clearly

established.

### 1.    First Amendment Claim

The Magistrate Judge recommends that the Court grant Defendants' Motion for

Summary Judgment as to Benning's First Amendment claim because the First

Amendment doesn't protect prisoners from having their email censored. [Doc. 84, pp.

4–10]; [Doc. 90, pp. 7–13].[4] Benning objects, arguing that (1) the *Martinez* standard

should apply to the censorship of outgoing emails—not *Turner*; (2) his claims survive

under the *Martinez* standard; and (3) even if *Turner* is the right standard, Benning's First

Amendment claim nonetheless survives. *See* [Doc. 87-2, pp. 4–16]; [Doc. 105, pp. 9–20].

---

[4] To tidy things up a bit, the Court notes that the first R&R [Doc. 84] analyzed Benning's First
Amendment claim and found that it should be dismissed. Benning filed objections [Doc. 87] to this R&R
and attacked in detail the Magistrate Judge's analysis. The Court recommitted the R&R to the Magistrate
Judge because it disagreed with the Magistrate Judge's finding that Benning did not raise a due process
claim until his Response to Defendants' Motion for Summary Judgment. *See* [Doc. 89]. In the Magistrate
Judge's latest R&R [Doc. 90], he defends and elaborates upon his original First Amendment analysis in
[Doc. 84]. *See* [Doc. 90, pp. 7–13]. In the interest of being as fair to Benning as possible given the
admittedly confusing procedural posture of this case, the Court will perform a "de novo determination of
those portions of the report . . . or recommendations to which objection is made," regardless of whether
Benning makes the objection in his initial objections [Doc. 87] or in his latest objections [Doc. 105]. 28
U.S.C. § 636(b)(1).

i.   *Is prisoner access to email a constitutional right or an administrative privilege?*

The Court must first decide whether prisoner access to email is a privilege or a constitutional right protected by the First Amendment. The answer to this critical question is important because if no constitutional right is implicated, then the Court will not have to apply either *Turner* or *Martinez*, because those standards only apply when prisoners' *constitutional rights* are impinged. *See Turner v. Safley*, 482 U.S. 78, 89 (1987). And, if no constitutional rights are at play, then the remaining Defendants will be protected by qualified immunity.

When finding that *Turner* is the correct standard for censorship of outgoing email, the Magistrate Judge concluded that "[a]ccess to email, like access to telephone or other advanced technologies, is a privilege that is above and beyond the ordinary right to correspondence." [Doc. 90, p. 8]. The Court agrees that prisoner access to email is a privilege. So does Benning. [Doc. 80, p. 6 ("Plaintiff does not have an independent, stand-alone right to electronic correspondence.")]. But the analysis doesn't end there.

Prisoners, of course, have First Amendment rights. *See Pesci v. Budz*, 935 F.3d 1159, 1165 (11th Cir. 2019) ("[P]rison walls 'do not form a barrier separating prison inmates from the protections of the Constitution.'" (citing *Turner*, 482 U.S. at 84)). And, a prisoner's First Amendment rights include having access to incoming and outgoing communication. In other words, prisoners have a right to communication; they do not

have a right to a specific form of communication, such as telephone or email, but those forms of communication can be a way an inmate exercises his First Amendment right to communicate. *See e.g., Solan v. Zickefoose*, 530 F. App'x 109, 110 (3d Cir. 2013) (recognizing that "e-mail can be a means of exercising" the First Amendment right of communicating with non-inmates); *Bonner v. Outlaw*, 552 F.3d 673, 677 (8th Cir. 2009) ("[T]he reasoning of [*Martinez*] applies to all forms of correspondence addressed to an inmate. It is the inmate's interest in 'uncensored communication' that is the liberty interest protected by the due process clause, regardless of whether that communication occurs in the form of a letter, package, newspaper, magazine, etc." (citing *Martinez*, 416 U.S. at 407)). Benning's claim does not hinge on his desire to be able to access email and the prison's refusal to provide him with that access. Benning's claim focuses on whether Defendants violated his First Amendment rights by censoring four of his emails sent using the email system made available to eligible inmates. Therefore, since the privilege-versus-right distinction does not resolve this question, the Court must still decide whether to apply the *Turner* or *Martinez* standard before it can determine the constitutionality of the censorship of Benning's four emails.

        ii.        *What is the correct standard of review to apply to regulations of outgoing prisoner email?*

       The Court begins by considering Benning's argument that the less-deferential standard from *Procunier v. Martinez*, 416 U.S. 396 (1974) is the governing standard for

restrictions of purely outgoing prisoner emails. In *Martinez*, the Supreme Court determined the appropriate standard of review for prison regulations restricting freedom of speech—specifically censorship of prisoner mail. 416 U.S. at 406–08. It held that a prison could censor prisoner mail if it met two criteria: (1) "the regulation or practice in question must further an important or substantial government interest unrelated to the suppression of expression;" and (2) "the limitation on First Amendment freedoms must be no greater than is necessary or essential to the protection of the particular government interest involved." *Id*. at 413. The *Martinez* decision was not intended to resolve "broad questions of prisoners' rights," but was specific to regulation of "personal correspondence between inmates and those who have a particularized interest in communicating with them." *Id*. at 408.

Then, in *Turner*, the Supreme Court articulated the standard to be used when scrutinizing regulations of prisoners' rights in general. 482 U.S. at 89. The two practices at issue in *Turner* were prohibitions on inmate-to-inmate correspondence and restrictions on inmate marriage. *Id*. at 81–82. The Supreme Court held that the same test should be applied to both the inmate-to-inmate correspondence regulation and the inmate marriage regulation: "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Id*. at 89.

After *Turner*, it appeared that Martinez was superseded and courts now had one test to apply to all prison regulations infringing on prisoners' constitutional rights—including those related to prisoner mail. After all, *Turner* uses all-inclusive, sweeping language like "when a prison regulation impinges on inmates' constitutional rights." *Id*. But, the Supreme Court then decided the case of *Thornburgh v. Abbott*, which considered the validity of a regulation that allowed prison officials to block prisoners' receipt of incoming published material, like books, if the material was found to be a security risk. 490 U.S. 401, 403 (1989). The Court of Appeals had applied the *Martinez* test. *Id*. The Supreme Court disagreed with the Court of Appeals and held that the *Turner* test was the proper inquiry for regulation of incoming published materials to inmates. *Id*. at 404. When explaining why *Turner* was to be applied instead of *Martinez*, the Supreme Court reasoned: "the logic of our analyses in *Martinez* and *Turner* requires that <u>*Martinez* be limited to regulations concerning outgoing correspondence</u>." *Id*. at 413 (emphasis added). Therefore, we know that *Martinez* is still alive, and it applies to "regulations concerning outgoing correspondence." 490 U.S. at 413. What is not clear is whether "outgoing correspondence" includes outgoing prisoner email, or instead only includes traditional hard-copy mail—the kind with envelopes, stamps, etc. 490 U.S. at 413. The Magistrate Judge concludes that *Martinez* is limited to traditional outgoing prisoner mail and not outgoing prisoner email. *See* [Doc. 90, p. 7 ("[*Martinez*] has been limited to

14

its facts, specifically to regulation of outgoing written communication by mail."].

Benning objects, arguing that "outgoing correspondence" includes outgoing prisoner

email. *See* [Doc. 105].

To reach its conclusion that *Martinez* is inapplicable to regulations of outgoing

prisoner emails, the Magistrate Judge relied principally on two Eleventh Circuit cases.

First, the Magistrate Judge relied on *Perry v. Secretary of the Department of Corrections*, 664

F.3d 1359, 1365 (11th Cir. 2011), for the proposition that the Eleventh Circuit has limited

*Martinez* to its facts: regulation of outgoing written communication by mail. [Doc. 90, p.

7]. *Perry* did not involve a First Amendment claim by a prisoner based on a restriction

of outgoing correspondence, but was a claim by someone outside of prison who

challenged a restriction on their ability to correspond with a prisoner. *Perry*, 664 F.3d at

1362. The Eleventh Circuit stated that the Supreme Court in *Thornburgh* "limited

*Martinez* to regulations involving only *outgoing mail*." *Perry*, 664 F.3d at 1365 (emphasis

added). The Eleventh Circuit then quoted the language from *Thornburgh* in a footnote—

language discussed earlier in this order—that uses the term "outgoing correspondence"

instead of "outgoing mail." *Id*. at 1365 n. 1 (quoting *Thornburgh*, 490 U.S. at 413–14).

*Perry*, albeit in dicta, shows us that the Eleventh Circuit believed the "outgoing

correspondence" referred to in *Thornburgh* actually means "outgoing mail" and would

not include email.

Second, the Magistrate Judge found that the restrictions here are comparable to the ones in *Pope v. Hightower*, 101 F.3d 1382 (11th Cir. 1996), and the *Turner* standard should be used here just as it was used there. [Doc. 90, p. 8]. The regulation at issue in *Pope* was a 10-person limit on the number of persons a prisoner could call. 101 F.3d at 1383. The Eleventh Circuit applied the *Turner* standard. *Id*. at 1384–85. The Magistrate Judge reasoned that email presents an even greater risk than telephone, and so if *Turner* applied in *Pope,* it should certainly apply to the withholding of Benning's four emails. [Doc. 90, p. 8].

Benning objects to the Magistrate Judge's reliance on *Perry* and *Pope* and points to out-of-circuit district courts that have applied the *Martinez* standard to regulations of prisoner emails. [Doc. 105, p. 11]. In *Doe v. Ortiz*, a prisoner challenged the prison's policy of excluding convicted sex-offenders from accessing email. No. 18-2958 (RMB), 2019 WL 3432228, at *1. (D.N.J. July 30, 2019). The court applied *Martinez* and found that the regulation survived constitutional scrutiny. *Id*. at 4–6. *Familetti v. Ortiz* is like *Doe v. Ortiz* in that it also involves a prisoner's challenge to his denial of access to the prisoner email system, and the court also applied *Martinez* to find the denial constitutional. No. 19-cv-7433 (NLH) (AMD), 2020 WL 5036198, at *3–4 (D.N.J. Aug. 26, 2020). These cases show that some courts apply *Martinez* even when the restriction at issue implicates email instead of traditional mail.

16

But these two cases are different from Benning's case since Benning does not challenge a denial from access to the JPay system, but instead challenges the prison's withholding of certain emails sent through JPay. However, during the Court's *de novo* review, it discovered another case that is factually similar to Benning's that he did not cite. In *Sutton v. Sinclair*, a prisoner challenged the prison's rejection of several pieces of his outgoing mail and email, and the magistrate judge applied *Martinez* to the withholding of his traditional mail and email alike. No. C19-1119-BJR-MLP, 2020 WL 7248463, at *5–7 (W.D. Wash. Sept. 28, 2020) (Peterson, Mag. J.), *adopted* No. C19-1119-BJR, 2020 WL 7241363, at *1 (Dec. 9, 2020). However, even applying *Martinez*, the court found the withholding of the prisoner's email was constitutional.

The Court recognizes that whether the *Martinez* standard governs regulations of outgoing email is a close call. As shown above, judges have examined the applicable precedent and found that outgoing email is "outgoing correspondence" to which the Supreme Court tells us *Martinez* applies. *Thornburgh*, 490 U.S. at 413; *see Doe v. Ortiz*, No. 18-2958 (RMB), 2019 WL 3432228, at *1. (D.N.J. July 30, 2019); *Familetti v. Ortiz*, No. 19-cv-7433 (NLH) (AMD), 2020 WL 5036198, at *3–4 (D.N.J. Aug. 26, 2020); *Sutton v. Sinclair*, No. C19-1119-BJR-MLP, 2020 WL 7248463, at *5–7 (W.D. Wash. Sept. 28, 2020) (Peterson, Mag. J.). Further, when considering the liberty interest protected by the Due Process Clause, the Eighth Circuit found that whether the prisoner's communication is

made by written mail or by email makes no difference and *Martinez* would apply to both. *Bonner v. Outlaw*, 552 F.3d 673, 677 (8th Cir. 2009).

On the other hand, there is no Eleventh Circuit or Supreme Court precedent that has considered whether outgoing email should be treated the same as outgoing traditional mail for the purpose of knowing whether to apply *Turner* or *Martinez* in the First Amendment context. And, as the Magistrate Judge pointed out, the Eleventh Circuit has suggested, in dicta, that *Martinez* is limited to "regulations involving *only outgoing mail*." *Perry*, 664 F.3d at 1365 (emphasis added).[5]

Forced to answer a question that is likely an issue of first impression, the Court holds that *Turner* is the proper standard to apply when reviewing the constitutionality of restrictions of outgoing prisoner email. The Court is hesitant to begin applying the more-exacting *Martinez* standard to a new set of facts that could have unanticipated and unknown implications to the administration of our prisons. *See Bell v. Wolfish*, 441 U.S. 520, 547 (1979) ("Prison administrators . . . should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are

---

[5] The Court also notes that *Pesci v. Budz*, 935 F.3d 1159, 1165 (11th Cir. 2019) (Grant, J.) is not dispositive of this question. It is factually distinct because it does not concern pure outgoing prisoner correspondence, but distribution of a publication to both other civil detainees and the non-incarcerated public alike. *Id.* Therefore, because the regulation was not one of purely outgoing prisoner correspondence, applying the *Turner* standard was appropriate there and *Pesci* does not change the outcome of the analysis in this case.

needed to preserve internal order and discipline and to maintain institutional
security.").

       *iii.*       *Applying the* Turner *standard*

     *Turner* requires that the infringement of a prisoner's constitutional right must be
"reasonably related to legitimate penological interests." *Turner*, 482 U.S. at 89. The
Magistrate Judge found that the Defendants' censorship of Benning's four emails
pursuant to SOP 204.10 satisfies this test.

     Benning objects, arguing that "the entire analysis is based upon a false fact,
perjured testimony, and a policy that does not exist, and never existed at any time
relevant to the gravamen of the complaint." [Doc. 105, p. 17]. Further, Benning also
states that the Defendants have "expanded" his ability to communicate with the outside
world via email, and that Defendants have "granted Plaintiff the relief that he
requested," and he "has prevailed on this issue." [*Id*. at p. 19].

     To start, Benning argues that summary judgment is inappropriate because there
is a dispute of material fact as to whether SOP 204.10 was in effect at the time his emails
were withheld. [Doc. 80, p. 3]; [Doc. 105, p. 18]. However, the Magistrate Judge correctly
concluded that Benning does not sufficiently contradict the Defendants' evidence that
the policy was in effect when Benning's emails were withheld. [Doc. 90, p. 10 n. 4]. The
Defendants introduce SOP 204.10 into evidence and it shows an effective date of

"8/15/2017." [Doc. 64-4]. Benning's emails that the GDC withheld were sent from

September 24, 2017, to February 6, 2018. [Doc. 28, p. 5]. Benning argues that his affidavit

[Doc. 80-5] contradicts the fact that SOP 204.10 was in effect during the withholding of

Benning's four emails. [Doc. 80, p. 3]. However, Benning's affidavit merely states that

"SOP 204.10 was not in effect prior to August 15, 2017." [Doc. 80-5, p. 2]. Since

Benning's first email was not withheld until September 24, 2017, Benning's assertion in

his affidavit creates no dispute of fact relevant to this analysis.[6]

The analysis now turns on whether the regulation is reasonably related to a

legitimate penological interest. The reasonableness inquiry is guided by four factors:

> (1) whether there is a 'valid, rational connection' between the regulation
> and a legitimate governmental interest put forward to justify it; (2) whether
> there are alternative means of exercising the asserted constitutional right
> that remain open to the inmates; (3) whether and the extent to which
> accommodation of the asserted right will have an impact on prison staff,
> inmates, and the allocation of prison resources generally; and (4) whether
> the regulation represents an 'exaggerated response' to prison concerns.

*Pesci v. Budz*, 935 F.3d 1159, 1166 (11th Cir. 2019) (quoting *Pope*, 101 F.3d at 1348). The

Magistrate Judge applied these four factors and concluded that the censorship of

---

[6] The point Benning seems to be trying to make in his Response to the Defendants' Motion for Summary
Judgment, and the fact he attempts to establish in his affidavit, is that SOP 204.10 was not in effect at the
time he signed the Acknowledgement Form. [Doc. 80-5, p. 2]. Benning signing the Acknowledgement
Form in order to access the JPay email system is irrelevant to this analysis, which requires that the
infringement of Benning's rights be "reasonably related to legitimate penological interests." *Turner*, 482
U.S. at 89. As explained earlier in this Order, the fact that prisoner access to email is a privilege, even one
that requires signing an acknowledgement form, does not resolve this dispute.

Benning's emails survives scrutiny under the *Turner* standard and that summary

judgment is appropriate. [Doc. 90, pp. 9–13]. The Court agrees.

Regarding the first factor, Benning's emails were withheld pursuant to a

legitimate penological interest. Benning's emails were withheld pursuant to SOP 204.10

[Doc. 64-4, pp. 14–15]. SOP 204.10, which prevents inmates from requesting their emails

be forwarded to another, or from requesting information about other offenders, furthers

a legitimate penological interest. SOP 204.10 is meant to protect citizens and prison

officials from intimidation and threats and to ensure prison security and safety. [Doc.

64-1, pp. 11–12]; [Doc. 64-4, ¶ 28]. Protecting the public, prison officials, and offenders

are legitimate penological interests. *See Pope*, 101 F.3d at 1385. And the email restrictions

in SOP 204.10 are reasonably related to those legitimate penological interests. *See id*.

(providing that a connection between a legitimate penological interest and a restriction

is valid and rational so long as it "is not so remote" as to render the restriction

"arbitrary or irrational").

Regarding the second *Turner* factor, Benning has "alternative means of exercising

the asserted constitutional right" by means of his unhindered access to USPS and can

freely send mail to non-inmates. *Pesci*, 935 F.3d at 1166; [Doc. 28, p. 12]; [Doc. 64-3, pp.

73, 78, 80]; [Doc. 80, pp. 4, 16, 19]. Benning objects, pointing to arguments he raised in

his Response to the Defendants' Motion for Summary Judgment. [Doc. 105, p. 19].

Benning argues that electronic correspondence is the preferred method of communication in the modern age. [Doc. 80, p. 14]. He also argues that there are some things that he can only send electronically and not through USPS. [*Id*. at p. 15]. The Court finds these arguments unpersuasive. The essence of the right at issue here is outgoing communication, and Benning can communicate with the outside world via USPS. *See Pope*, 101 F.3d at 1385 ("[T]he Supreme Court has instructed that the right must be viewed sensibly and expansively." (citing *Thornburgh*, 490 U.S. at 417)).

Regarding the third *Turner* factor, "whether and the extent to which accommodation of the asserted right will have an impact on prison staff, inmates, and the allocation of prison resources generally," the Magistrate Judge found that the burden on putting an unlimited number of people on a prisoner's approved email list would result in prison administrators having to do endless background checks at great cost. [Doc. 90, p. 12]. Benning objects, arguing that there is no longer any limit on who he can email, which, according to Benning, proves the burden on the prison wouldn't be so tough after all. [Doc. 105, p. 19]. Benning also disputes that those on his approved email list must have undergone background checks. Taking Benning at his word, if there is no longer any restriction on who prisoners can email, and no background check requirement, it does cut against the Government's showing on this factor.

22

Finally, regarding the fourth *Turner* factor, the regulations here are not an "exaggerated response" to prison concerns. *Pesci*, 935 F.3d at 1166. As the Magistrate Judge reasoned, in *Pesci*, the Eleventh Circuit upheld a total ban on a monthly publication critical of the prison system. *Id*. at 1171. If the total ban was not an "exaggerated response," then neither was the censorship of 4 of Benning's 112 emails sent during 2017 and 2018.

The Court's *de novo* review finds the Magistrate Judge correctly applied *Turner* to find that the censorship of Benning's four emails passes constitutional scrutiny. The Defendants make a strong showing on three of the four factors, with only the third factor possibly cutting in Benning's favor. Therefore, since SOP 204.10 is "reasonably related to legitimate penological interests," the Magistrate Judge's recommendation dismissing Benning's First Amendment claim is due to be adopted.

### 2. Due Process Claim

In his initial R&R, the Magistrate found that Benning attempted to add a due process claim for the first time in his Response to the Defendants' Motion for Summary Judgment, which is too late. [Doc. 84, p. 2 n. 2]. The Court disagreed because Benning sought to state a claim based on a lack of "notice" and "opportunity to be heard," which are classic procedural due process buzzwords, and, in the Court's opinion, is enough to count as alleging a procedural due process claim under the liberal *pro se* pleading

standard. [Doc. 28, pp. 5, 11]. The Court recommitted the R&R to the Magistrate Judge for him to consider Benning's procedural due process claim. [Doc. 89]. The Magistrate Judge did so, and now recommends that any Due Process claim Benning alleged be dismissed because he (1) abandoned it, and, alternatively (2) it fails on the merits. [Doc. 90, pp. 2–7].

Benning's first ten objections focus on this portion of the Magistrate Judge's R&R. [Doc. 105, pp. 1–9]. Benning argues that he alleged a due process claim, that he did not abandon it, and that the claim survives on the merits. [*Id*.]. The Court agrees with Benning that his operative complaint stated—or at least attempted to state—a procedural due process claim. The issue thus becomes whether Benning has abandoned his due process claim since then.

### i.    Was Benning's due process claim abandoned?

The Magistrate Judge recommends that Benning's procedural due process claim be deemed abandoned for three overlapping reasons: (1) Benning failed to provide adequate notice of this claim to the Defendants or to the Court; (2) the litigants did not have adequate opportunity to examine this claim through discovery; and (3) Benning did not diligently pursue this claim. [Doc. 90, p. 3].

First, as the Court has already explained in its recommit order and in this Order, Benning did raise a procedural due process claim in his complaint even though he did

not use the term "due process" or refer explicitly to the Fourteenth Amendment. *See*

[Doc. 89]. Under the *pro se* pleading standard, it is appropriate for the Court to construe

Benning's complaint of lack of "notice" and "opportunity to be heard" as a Fourteenth

Amendment procedural due process claim. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007)

("A document filed *pro se* is 'to be liberally construed,' and 'a *pro se* complaint, however

inartfully pleaded, must be held to less stringent standards than formal pleadings

drafted by lawyers.'" (quoting *Estelle v. Gamble*, 429 U.S. 97 (1976))); Fed. R. Civ. P. 8(e)

("Pleadings must be construed so as to do justice."). *See also Mathews v. Eldridge*, 424

U.S. 319, 333 (1976) ("The fundamental requirement of due process is the opportunity to

be heard at a meaningful time and in a meaningful manner.") (cleaned up). Therefore,

the Magistrate Judge's first basis for abandonment—that the Court and the Defendants

lacked notice of the claim—falls short.

The Magistrate Judge also recommends that Benning's procedural due process

claim should be deemed abandoned because he violated Federal Rule of Civil

Procedure 41(b) and the Court's screening order by not diligently prosecuting this

claim. Specifically, the Magistrate Judge reasoned that discovery in this case was

extensive and contested, and that Benning had ample opportunity to perform discovery

related to his procedural due process claim but did not. [Doc. 90, p. 4]. The Magistrate

Judge cited Benning's Motion to Compel [Doc. 39] and Motion for Contempt [Doc. 61]

as examples of opportunities to request discovery on the procedural due process claim that Benning did not take advantage of. [Doc. 90, p. 4]. Benning objects, and cites to his Motion to Compel where he does request discovery directly relevant to his procedural due process claim. [Doc. 105, p. 6]. Specifically, Benning requested the following in his Motion to Compel:

> 4. All documents that relate to, refer to, describe or are any notice Plaintiff was or was not given that Plaintiff's emails had been censored/intercepted.
> 5. All documents that relate to, refer to, describe all persons involved in decisions that relate to, refer to or describe Plaintiff's emails during the request period.
> 7. All documents that relate to, refer to, describe the processes and procedures used for handling offender emails.

[Doc. 39, p. 4]. The Court finds that these requests—especially the one specific to "notice"—counts as a discovery request directly relevant to Benning's due process claim. Therefore, the Magistrate Judge's recommendation that Benning's procedural due process claim should be deemed abandoned because of his failure to prosecute falls short. Accordingly, the Court must consider the merits of Benning's procedural due process claim.

> ii.     Does Benning's due process claim have merit?

On the merits, the Magistrate Judge recommends that Benning had no liberty interest in his outgoing emails so that any deprivation of them triggered the requirements of due process. [Doc. 90, p. 5]. Benning objects, returning to the argument

26

that *Procunier v. Martinez* establishes there is a protected liberty interest in purely outgoing communications. [Doc. 105, p. 8]. For the same reason the Court decides that email should not be treated the same as outgoing physical mail for the purposes of determining which standard to use in a First Amendment analysis, the Court likewise holds that the liberty interest in "communication by letter" identified by the Supreme Court in *Martinez* should not be interpreted to include Benning's outgoing emails. 416 U.S. at 417. Further, the Court is unable to identify any claim or objection by Benning, in [Doc. 87-2] or [Doc. 105], that argues he has a protected interest on a basis other than a liberty interest based on a *Martinez* theory. In sum, Benning's due process claim fails on the merits because he does not have a protected liberty interest in his outgoing emails that would trigger the Fourteenth Amendment's guarantee of due process.

### 3.   Clearly Established

As explained above, the Court finds that Benning has failed to show a violation of either his First Amendment or procedural due process rights. But, even if the Court wrongly concluded that the Defendants did not violate any of Benning's constitutional rights, whether *Martinez* actually governs "outgoing correspondence" or supports Benning's theory that he has a constitutional liberty interest in outgoing emails is far from being clearly established.

First, the Eleventh Circuit has never issued an opinion directly on point. "The usual way of establishing that a constitutional violation was clearly established law is by pointing to a case, in existence at the time, in which the Supreme Court or [the Eleventh Circuit] found a violation based on materially similar facts." *Cantu v. City of Dothan*, 974 F.3d 1217, 1232 (11th Cir. 2020) (citing *Priester c. City of Riviera Beach*, 208 F.3d 919, 926 (11th Cir. 2000)). The closest the Court comes to finding a case with similar facts that appeared to apply *Martinez* to censorship of outgoing email is a district court opinion from the Western District of Washington. *See Sutton*, No. C19-1119-BJR-MLP, 2020 WL 7248463, at *5–7, *adopted* No. C19-1119-BJR, 2020 WL 7241363, at *1. Here, the Court admits it is a close call as to whether *Martinez* or *Turner* applies to Benning's claim and the Court has grappled with a question of first impression. And, because it is a question of first impression, the Court easily concludes that these rights were not "clearly established" so that the Defendants are not entitled to qualified immunity.[7]

## CONCLUSION

In conclusion, the Court's *de novo* review reveals the remaining Defendants are entitled to qualified immunity. The Court agrees that Benning's First Amendment and procedural due process claims fail on the merits. In other words, the Court finds that

---

[7] A constitutional right can be clearly established even without identifying a case with facts directly on point in "extreme factual circumstances" where the violation goes to the "very core" of the constitutional right at issue. *See Cantu v. City of Dothan*, 974 F.3d 1217, 1232–33 (11th Cir. 2020) (cleaned up). This is not one of those cases.

the Defendants did not violate any of Benning's constitutional rights. Therefore,

qualified immunity shields the Defendants. In the alternative, assuming that Benning

suffered a constitutional violation, the Court finds that those Constitutional rights were

not clearly established at the time of the violation. Again, the remaining Defendants

would be entitled to qualified immunity so that he is not entitled to any form of relief.

Accordingly, the Court concludes that the Magistrate Judge was correct to recommend

that the Defendants' Motion for Summary Judgment be granted, albeit for somewhat

different reasons. Therefore, the Court **ADOPTS** the Magistrate Judge's Report &

Recommendation [Doc. 90], and the Defendants' Motion for Summary Judgment [Doc.

64] is **GRANTED**. The Clerk of Court may enter judgment against Benning.

      **SO ORDERED**, this 30th day of April, 2021.

S/ Tilman E. Self, III
**TILMAN E. SELF, III, JUDGE**
**UNITED STATES DISTRICT COURT**