## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
## MACON DIVISION

| | |
|---|---|
| **RALPH HARRISON BENNING,**<br><br>　　　*Plaintiff,*<br><br>**v.**<br><br>**Comm'r TYRONE OLIVER,**[1] ***et al.,***<br><br>　　　*Defendants.* | **CIVIL ACTION NO.**<br>**5:18-cv-00087-TES-CHW** |

## ORDER[2]

One couldn't readily tell from the back and forth in the briefing, but the remaining question in this case is relatively simple: Can the Georgia Department of Corrections limit Plaintiff Ralph Benning's ability to send ***emails***[3] to only those 12

---

[1] Former Commissioner Gregory Dozier is automatically substituted by current Commissioner Tyrone Oliver. *See* Fed. R. Civ. P. 25(d); [Doc. 160, p. 1]. The Clerk of Court is **DIRECTED** to **SUBSTITUTE** Commissioner Tyrone Oliver in place of Defendant Gregory Dozier.

This action began with four Defendants: Commissioner Gregory Dozier, Georgia Department of Corrections Inmate Email Censor, Margaret Patterson, and Jennifer Edgar. To the extent this Order refers to "Defendants," it includes most, if not all, of those parties.

[2] The parties—and the Court—agreed to resolve the remaining First Amendment claim via cross summary judgment motions. [Doc. 156, p. 1 n.1]; [Doc. 153]. Even more, the parties agreed to stipulate facts sufficient for the Court to enter Judgment on Plaintiff's due process claims. [Doc. 147]; [Doc. 153].

[3] Importantly, there is no contact restriction on handwritten letters. [Doc. 156-9, p. 8 (GDC Offender Receipt of Mail Policy, SOP 227.06: "Offenders may correspond with ***any person*** without limitations on number of letters") (emphasis added)].

individuals listed on his in-person visitation log[4] and cleared by a background

check?[5]

While a seemingly simple policy and legal question, this case evolved into

quite the mess, and the Georgia Department of Corrections' actions in this matter

are less than laudable. The same is true for the instant Motion for Summary

Judgment [Doc. 160]. In short, Defendant Tyrone Oliver decided to forego arguing

(more like completely ignoring) the merits of Plaintiff's injunction request and

instead attempted to avoid liability by rehashing an argument the Court already

rejected. *See* [Doc. 123]; [Doc. 132]. And, to the extent Commissioner Oliver argued

the actual remaining issue—without recycling old, rejected positions—in his

Response [Doc. 170] to Plaintiff's Motion for Summary Judgment [Doc. 162], his

arguments lack both substance and merit.[6]

---

[4] An offender may only have 12 people on his visitation log. [Doc. 156, ¶ 17]. To be *eligible* for approval to be on an offender's visitation log, an individual must be a "member[] of an offender's [i]mmediate [f]amily," a "member[] of an offender's [e]xtended [f]amily upon request and verification,"or must have a "[s]ignificant [r]elationship" with an offender. [Doc. 156-5, p. 11 (GDC Visitation of Offenders Policy, SOP 227.05)]. And, past that, those who are *eligible* to visit an offender must still submit an "Application for Visitation Privilege," consent to a release of their GCIC/NCIC driver and criminal history, and ultimately be *approved* by the Warden or his designee. [*Id.* at p. 7].

[5] For shorthand, the Court refers to this rule as the "email-contact restriction."

[6] To be clear, as Commissioner Oliver's counsel pointed out during a hearing on this claim, the First Amendment issue was not a "question of fact," but rather, "a question of whether or not the department has the legal authority to [restrict Plaintiff's email contacts] or not under the First Amendment." [Audio Recording, July 15, 2024, 11:34:21–55]. Therefore, Commissioner Oliver knew that this issue would be decided—*on the merits*, and not on rejected procedural arguments—at this stage. As explained below, the Court also made it exceedingly clear that Benning's First Amendment claim was back in the case. [*Id.*].

There's no need for suspense: the Court **DENIES** Commissioner Oliver's Motion for Summary Judgment [Doc. 160] and **GRANTS** Plaintiff's Motion for Summary Judgment [Doc. 162] and **ENJOINS** the Defendant's enforcement of the email-contact restriction as set forth below.

## BACKGROUND

The details of this case are well-known to the parties, this Court, and the Eleventh Circuit. For that reason, the Court includes the factual background as explained by the Circuit in its Opinion in this matter:

> Ralph Harrison Benning is serving a life sentence in Georgia and is in the custody of the GDC. As an inmate, his communications with those on the outside are governed by GDC policies and regulations.
>
> In September and October of 2017, Mr. Benning attempted to send three emails to his sister, Elizabeth Knott—one on September 24, 2017, and two on October 9, 2017. Those emails were intercepted by the GDC and never delivered to Ms. Knott due to violations of SOP 204.10. All three emails were about gang problems and fraud and corruption in the GDC.
>
> Margaret Patterson, a GDC analyst, intercepted the September 24 email because Mr. Benning had asked Ms. Knott to forward it to third parties. Jennifer Edgar, another GDC analyst, intercepted the October 9 emails for the same reason. Neither Ms. Patterson nor Ms. Edgar notified Mr. Benning that his emails had been intercepted and withheld. Nor did they give him an opportunity to appeal their decisions to a different GDC official.
>
> Another email Mr. Benning tried to send, this time to the Aleph Institute on February 6, 2018, was similarly intercepted and never sent. In this email, Mr. Benning discussed receiving a declaration and a "Kosher Authorities Template," and expressed gratitude. But he also asked that

3

another inmate's address be "corrected to show he is now at Wilcox State Prison." GDC analyst Romita Keen intercepted this email because it "contained information about another inmate." Ms. Keen did not inform Mr. Benning that the email had been intercepted, and did not give him the opportunity to appeal her decision to a different GDC official.

Mr. Benning mailed Ms. Knott handwritten copies of the emails he had tried to send her in September and October of 2017. To Mr. Benning's knowledge, his sister received those letters. Mr. Benning did not send a handwritten version of his February 2018 email to the Aleph Institute.

In 2018, Mr. Benning filed a *pro se* civil rights suit pursuant to 42 U.S.C. § 1983. His complaint named the GDC Commissioner (then Gregory Dozier, now [Tyrone Oliver]) and Ms. Patterson and Ms. Edgar—the GDC analysts who had intercepted his emails in September and October of 2017—as defendants. It did not name Ms. Keen—the GDC analyst who intercepted the email to the Aleph Institute in February of 2018—as a defendant.

Mr. Benning alleged that the GDC, Ms. Patterson, and Ms. Edgar unconstitutionally censored certain emails he tried to send, and failed to provide him notice, thereby violating his rights under the First Amendment and the Due Process Clause of the Fourteenth Amendment. He requested specific declaratory and injunctive relief, as well as compensatory, nominal, and punitive damages.

The defendants filed a motion for summary judgment. They argued in part that Mr. Benning did not have a constitutional right to communicate through email and that, even if he did, the interception and withholding of his emails was constitutional. Ms. Patterson and Ms. Edgar also asserted that they were entitled to qualified immunity from Mr. Benning's claims for damages.

The district court granted summary judgment in favor of the defendants. Mr. Benning appealed, and counsel thereafter appeared on his behalf.

*Benning v. Comm'r, Georgia Dep't of Corr.*, 71 F.4th 1324, 1327 (11th Cir. 2023), *cert.*

*denied sub nom. Benning v. Oliver*, 144 S. Ct. 1457 (2024) (internal citations omitted). In

that Opinion, the Eleventh Circuit held:

> Mr. Benning had a First Amendment liberty interest in his outgoing emails. As a result, he was entitled to procedural safeguards when his emails in September and October of 2017 were intercepted. Although Ms. Patterson and Ms. Edgar are entitled to qualified immunity on Mr. Benning's requests for damages on the due process claims, those claims must be tried to a jury.

*Id.* at 1340. As to his First Amendment claims, the Circuit affirmed, finding: "Ms.

Patterson and Ms. Edgar are entitled to qualified immunity, and the requested

injunctive relief against the Commissioner was not connected to the policies that Mr.

Benning challenged." *Id.*

But that does not tell the whole story as it pertains to the instant cross

motions. A timeline is likely helpful to set the scene:

- *August 15, 2017*: GDC issues the Original SOP 204.10. [Doc. 156-2].

- *March 9, 2018*: Plaintiff files his initial Complaint. [Doc. 1].

- *September 4, 2018*: GDC issues the Revised SOP 204.10, adding the email-contact restriction. [Doc. 156-1].

- *"Late 2018"*: GDC pauses enforcement of Revised SOP 204.10 "prior to implementation." [Doc. 156, ¶ 12].[7]

---

[7] Although the parties stipulate to this fact, the timeline doesn't match up—or GDC never communicated the pause in enforcement to its inmates or officers. *See, e.g.*, [Doc. 64-4, Wallace Aff. (filed in 2020, insisting that inmates may only email those on their visitation logs)]; [Doc. 64-3, Benning Depo., pp. 54:21—55:1 (taken in 2019, "[Q:] So, unless someone has been cleared to visit you physically at the prison, you can't email them, or they can't email you; correct? [A:] Correct.")]; [Audio Recording, September 26, 2023, 12:33:26–34:49 (Defendants' counsel arguing that the policy went into effect as an "experimental policy," and affirming that it was enforced at one point)].

- *April 5, 2019*: Plaintiff amends Complaint to add challenges to Revised SOP 204.10. [Doc. 28].

- *June 20, 2019*: Defendants depose Plaintiff regarding, in part, the email-contact restriction. [Doc. 64-3, Benning Depo., pp. 54:21—55:1].

- *February 28, 2020*: GDC Criminal Intelligence Unit Officer Richard Wallace files an affidavit stating that "inmates are only allowed to email with those who have been cleared by security personnel to visit Plaintiff." [Doc. 64-4, Wallace Aff., ¶ 30].

- *February 28, 2020*: Defendants file a Statement of Undisputed Material Facts, stating that "While incarcerated, Plaintiff has been allowed to communicate through email with a list of people who have been cleared by GDC's security personnel to visit with Plaintiff at the prison . . . Thus, only those who have agreed to submit to a criminal background checks [sic], and cleared said background checks, are allowed communicate with Plaintiff through email." [Doc. 64-2, ¶¶ 6–7].

- *February 2, 2021*: Plaintiff concedes policy is not being enforced. [Doc. 103].

- *April 30, 2021*: The Court finds Plaintiff's challenge to the email-contact restriction moot. [Doc. 108, p. 7].

- *July 22, 2022*: During oral argument at the Eleventh Circuit, Defendants' counsel tells the Circuit that the email-contact restriction is not being enforced.[8]

- *"Late 2022"*: Revised SOP 204.10 is once again enforced, but Defendants never inform the Circuit of their decision to once again enforce the policy or that their previous statements regarding nonenforcement were no longer accurate. [Doc. 156, ¶ 13].

---

[8] *See* Oral Argument at 18:11—19:22, *Benning v. Comm'r, Ga. Dep't of Corrs.*, 71 F.4th 1324 (11th Cir. 2023) (No. 21-11982), https://www.ca11.uscourts.gov/oral-argument-recordings?title=&field_oar_case_name_va lue=benning&field_oral_argument_date_value%5Bmin%5D=&field_oral_argument_date_value%5Bmax %5D=.

- *June 23, 2023*: Eleventh Circuit issues its Opinion. [Doc. 116].

- *September 25, 2023*: After return of the Circuit's Mandate, Plaintiff seeks relief from judgment because Revised SOP 204.10 is being enforced again. [Doc. 120].

- *October 16, 2023*: Defendants oppose Plaintiff's Motion for Relief from Judgment—arguing, in part, "It makes no sense for Defendants to conspire to undermine just this claim and none of the other claims . . . Benning cannot show that GDC's change in policy in any way prevented him from prosecuting his claims." [Doc. 123, p. 4].

- *October 30, 2023*: The Court grants Plaintiff's Motion for Relief from Judgment. [Doc. 132].
  Now, to clean it up: the Department of Corrections modified its Standard

Operating Procedure ("SOP") 204.10 *during* this litigation. As issued on August 15, 2017, SOP 204.10 contained no requirement regarding who offenders may contact via email. Sure, the 2017 version included limitations on forwarding emails, discussing other offenders in those written communications, etc., but it wasn't until the September 4, 2018 update to SOP 204.10 that the GDC included a requirement that an offender may only communicate with "a person on his/her approved visitation list." [Doc. 156-1, p. 1].[9] Indeed, Jay Sanders—GDC's Assistant Commissioner for Inmate Services—wrote a letter on August 8, 2018, explaining that these changes would become effective on October 4, 2018. [Doc. 156-3].

---

[9] *Compare* [Doc. 156-2, p. 1 (2017 version defining Electronic Mail as "Correspondence sent electronically over an authorized network through a Kiosk.")], *with* [Doc. 156-1, p. 1 (2018 version defining Electronic Mail/Message as "Correspondence sent electronic over an authorized network through a Kiosk **between an offender and a person on his/her approved visitation list**.") (emphasis added)].

Importantly, Plaintiff filed this action on March 9, 2018, well before the GDC changed its email policy to restrict outgoing to emails to those on visitor logs. [Doc. 1]. Plaintiff's Amended Complaint [Doc. 28], filed on April 5, 2019, challenged these new policies. *See* [Doc. 28, ¶ 29–30]. And, to be clear, everyone operated under the assumption that Plaintiff included that claim in his operative pleading. Even Defendants' earlier summary judgment motion dedicated a portion of its brief to the issue. [Doc. 64-1, p. 11]. What's more, Plaintiff made clear in his deposition that the email-contact restriction "is part of what [he is] challenging." [Doc. 64-3, Benning Depo., 51:16–17]. Once again, Defendants spent significant time in Plaintiff's deposition exploring that claim. [*Id.* at pp. 51:20—56:21].[10] And Defendants never once argued that it paused enforcement of Revised SOP 204.10. In fact, Defendants' Answer to Plaintiff's Amended Complaint did not specifically respond to Plaintiff's numbered allegations regarding the email-contact restriction. *Compare* [Doc. 28, ¶¶ 29–34], *with* [Doc. 35 (ending with ¶ 15)].[11]

---

[10] This is crucial, as Federal Rule of Civil Procedure 15(b) allows for implicit consent to try issues not raised in the operative pleading. Therefore, even if Plaintiff did not sufficiently allege claims in his Amended Complaint, everyone—GDC and Commissioner Oliver included—operated under the assumption that he did in fact raise such a claim. And, those same actions preclude any prejudice argument that Commissioner Oliver could raise. *Cioffe v. Morris*, 676 F.2d 539, 542 (11th Cir. 1982). Although Rule 15(b) applies to cases at trial, it also applies to cases receiving final judgment—since the parties stipulated to facts in lieu of trial, the logic applies here, too. *Cf. Mead v. McKeithen*, 571 F. App'x 788, 791 (11th Cir. 2014).

[11] Admittedly, these specific portions of Plaintiff's Amended Complaint were contained in the attachments as opposed to the limited space provided in the Court's Standard 1983 form. But, that doesn't excuse the Defendants' lack of a response.

Then, in his affidavit responding to Defendants' original summary judgment motion, Plaintiff conceded that GDC had given him his requested relief when it removed (or at least quit enforcing) the email-contact restriction. [Doc. 80-5, ¶ 2]. Accordingly, the Court dismissed his claim requesting an order requiring the "defendants to allow Plaintiff to email anyone except for persons who have specifically requested to be restricted to Plaintiff" as moot. [Doc. 108, p. 8].[12] It doesn't take uncommon sense to see that the Plaintiff only consented to an order dismissing that particular claim because the Defendants were no longer enforcing that policy. Plaintiff's candid admission saved the Court and Defendants the trouble of dealing with an issue no longer in the case. But, the Court can't stress enough that the Court and Plaintiff clearly relied on the Defendants' actions and but for its decision to no longer enforce the policy, the Court would have reached a decision in its earlier opinion.

Fast forward to September 25, 2023, when Plaintiff filed a Motion for Relief from Judgment or Order [Doc. 120], specifically asking the Court to "relieve Plaintiff from the judgment concerning the security clearance requirement and hear

---

[12] To be sure, Defendants' counsel also informed the Eleventh Circuit at oral argument that GDC lifted the email-contact restriction. *See* Oral Argument at 18:11—19:22, *Benning v. Comm'r, Ga. Dep't of Corrs.*, 71 F.4th 1324 (11th Cir. 2023) (No. 21-11982), https://www.ca11.uscourts.gov/oral-argument-recordings?title=&field_oar_case_name_value=benning&field_oral_argument_date_value%5Bmin%5D=&field_oral_argument_date_value%5Bmax%5D=.

Plaintiff's claim on its merits." [Doc. 120, p. 3]. In Defendants' Response [Doc. 123], they argued that Plaintiff's claim "is contrary to the Prison Litigation Reform Act (PLRA) which limits 'prospective relief' to 'no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs.'" [Doc. 123, p. 2]. Second, Defendants insisted that "running a prison 'is an inordinately difficult undertaking that requires expertise, planning, and the commitment of resources,' and thus mandates 'due deference to … prison and jail administrators in establishing necessary regulations and procedures to maintain good order, security and discipline.'" [*Id.* at p. 3 (citing *Turner v. Safely*, 482 U.S. 78, 85 (1987))]. As Defendants put it, "the purported regulation is not relevant to the reasons why the emails at issue here were withheld," because "this case has always been about whether GDC's regulations that led to Benning's emails being withheld violated Benning's First Amendment rights." [*Id.* at p. 3].[13] The best the DOC could offer as to why they reinstituted the policy after arguing to this Court and reiterating to the Eleventh Circuit that it was no longer in effect was that it was just a coincidence. *See generally* [Audio Recording, September 26, 2023, 12:33:26–34:49].

    The Court granted Plaintiff's Motion to relieve him from the effect of the Court's earlier dismissal of his First Amendment claim, finding that while he could

---

[13] To be sure, everyone agrees on this point. And the email-contact restriction is the quintessential "withholding" of Plaintiff's emails.

certainly "file a new lawsuit against Defendants seeking injunctive relief as it relates to the security requirements that are apparently back in place," "judicial economy" warranted a finding that his "issues related to injunctive relief for the security clearance requirements for email are clearly no longer moot." [Doc. 132, p. 3].[14] The Court continued, opining that "this undeniably suspicious reinstatement of a previously removed policy—the removal which, of course, constituted the Court's basis for denying injunctive relief[—]certainly merits that Plaintiff be allowed to fully litigate the policy that is apparently now being reinforced again." [*Id.*].

Now back to present day. Defendant Tyrone Oliver—the sole remaining Defendant as to this claim—moves for summary judgment, arguing that "this remaining request for injunctive relief, like Plaintiff's other requests, lacks any connection to the claims pled in the amended complaint," so "this Court should again deny any injunctive relief." [Doc. 160-1, p. 6].[15] Sound familiar? It should,

---

[14] And this certainly made sense given that the Circuit required the Court to address some remaining issues on remand. There was simply no need to require Plaintiff to file a separate suit, especially since the Defendants caused the issue by reversing its policy decision and never informing the Circuit of its decision to do so.

[15] Commissioner Oliver's Reply [Doc. 174] was equally unhelpful. Indeed, the Reply continues to assert that "while it is certainly true that enforcement of the restriction on who an offender may email has changed, that does not have anything to do with whether Plaintiff's requested relief has any connection to the claim in his Amended Complaint." [Doc. 174, p. 2].

Commissioner Oliver faults Plaintiff for not including this challenge in the pro se form complaint's section "V. Statement of Claim." [*Id.* at p. 3]. However, Plaintiff *did* include an attachment titled "V. Statement of Claim (cont.)." [Doc. 28, p. 11]. In that attachment, Plaintiff lists his challenge to the email-contact restriction. And to be absolutely clear, the pro se form complaint instructs plaintiffs to use

because it is the same argument Defendants made in response to Plaintiff's Motion for Relief from Judgment. [Doc. 123, p. 2]. And, as a reminder, Defendants lost that Motion, too.[16]

## LEGAL STANDARD

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Here, the parties have agreed to the facts and presented cross motions for summary judgment, avoiding the necessity of a trial. *See Smith v. Nat'l Credit Union Admin. Bd.*, 36 F.3d 1077, 1078 (11th Cir. 1994). The Court must now apply the law to the stipulated facts to decide whether or not the email-contact restriction meets constitutional muster. *See, e.g., Saregama India Ltd. v.*

---

"separate sheets of paper if necessary" multiple times throughout the document. [Doc. 28, pp. 5–6]. Therefore, Commissioner Oliver's arguments that Plaintiff somehow didn't include the email-contact restriction in the proper section of the form pro se complaint is simply misguided and flat wrong.

[16] Commissioner Oliver's law-of-the-case doctrine arguments are also unpersuasive. Indeed, "the law of the case is not an inexorable command, for the district court may address issues which have not been disposed of on appeal." *Luckey v. Miller*, 929 F.2d 618, 621 (11th Cir. 1991). And here, the Eleventh Circuit explicitly did not consider Plaintiff's request for injunctive relief on the email-contact restriction because the Defendants unequivocally told the panel that the policy was no longer in place. *Benning*, 71 F.4th at 1339. Of course, not long after the oral argument, the Defendants conveniently crawfished on their assertion and reinstituted the policy, apparently thinking themselves clever enough to insulate the claim from any meaningful review. And, they kept their decision from the Circuit, allowing that Court to believe that the policy was no longer being enforced, undeniably relying on their word in making their decision.

As discussed, the Court revived Plaintiff's email-contact restriction arguments when it granted his motion for relief from judgment. [Doc. 132]. But even more, Plaintiff's Amended Complaint is replete with factual allegations referring to the email-contact restriction. *See* [Doc. 28, ¶¶ 29–30]. To be sure, Plaintiff's Amended Complaint alleges that GDC unreasonably treats mail and email communications differently regarding the contact restrictions. [*Id.* at ¶¶ 33–36].

*Mosley*, 635 F.3d 1284, 1290 (11th Cir. 2011). As explained below, it does not.

## DISCUSSION

Let's start with the basics: Email is clearly a form of First Amendment-protected correspondence. *See Benning*, 71 F.4th at 1330–32; *cf. Thornburgh v. Abbott*, 490 U.S. 401, 407 (1989); *Reno v. Am. C.L. Union*, 521 U.S. 844, 869 (1997). And, "[i]t is equally certain that [p]rison walls do not form a barrier separating prison inmates from the protections of the Constitution." *Turner*, 482 U.S. at 84. Therefore, confined offenders maintain a First Amendment right to communicate with those outside of the prison, including via email.[17]

It is also true that these rights "must be exercised with due regard for the inordinately difficult undertaking that is modern prison administration." *Thornburgh*, 490 U.S. at 407 (citing *Turner*, 482 U.S. at 85). So, to more succinctly set the scene: Plaintiff's constitutionally protected First Amendment rights sit on one side of the scale while GDC's safety and security concerns sit on the other. This Order balances those two competing principles.

### I.    Proper Standard

Commissioner Oliver does not seek summary judgment on the merits of Plaintiff's requested relief regarding the email-contact restriction. *See generally* [Doc.

---

[17] Likewise, "prison walls . . . [do not] bar free citizens from exercising their own constitutional rights by reaching out to those on the 'inside.'" *Thornburgh*, 490 U.S. at 407.

160-1]. Instead, Commissioner Oliver seemingly saved those arguments for his Response [Doc. 170] to Plaintiff's Motion for Summary Judgment [Doc. 162]. In that Response, Commissioner Oliver contends (mostly in passing) that *Turner v. Safley*—not *Procunier v. Martinez*, 416 U.S. 396 (1974)—is the "appropriate test for prison email regulations." [Doc. 170, p. 5 (capitalization altered)]. The rest of Commissioner Oliver's "arguments" hinge on that point.[18]

Commissioner Oliver's attachment to *Turner* makes sense, given that the *Turner* standard is much friendlier to his cause. To be sure, *Turner* requires a regulation only be "reasonably related to legitimate penological interests." 482 U.S. at 89. *Martinez*, though, requires "the regulation or practice in question . . . further an important or substantial governmental interest unrelated to the suppression of expression," and that "the limitation of First Amendment freedoms . . . be no greater than is necessary or essential to the protection of the particular governmental interest involved." 416 U.S. at 413.

The problem for Commissioner Oliver's position is that the Supreme Court foreclosed it in *Thornburgh v. Abbott*, 490 U.S. 401, 413 (1989).[19] In *Thornburgh*, the

---

[18] The Court uses the term "arguments" loosely because Commissioner Oliver's Response does not seriously engage with the *Turner* factors—yes, the very test that he argues applies to this case. To be clear, Commissioner Oliver only mentioned those factors in a single footnote. [Doc. 170, p. 6 n.2].

[19] The Circuit's Opinion in this case clearly applied *Martinez* to Plaintiff's due-process claims. Not so clear, though, is the standard the Circuit applied to Plaintiff's First Amendment claims. *See Benning*, 71 F.4th at 1330 n.3.

Supreme Court, after comparing both *Martinez* and *Turner*, held "the logic of our analyses in *Martinez* and *Turner* requires that *Martinez* be limited to regulations concerning outgoing correspondence." 490 U.S. at 413. In other words, *Turner* "dealt with **incoming** personal correspondence from prisoners," while *Martinez* centered around "**outgoing** correspondence." *Thornburgh*, 490 U.S. at 413. And, as (intelligently) conceded by Plaintiff, this challenge is about "outgoing prisoner correspondence." [Doc. 162, p. 2].

Such a distinction tracks with the considered interests in *Martinez* and *Turner*. As the Fifth Circuit explained, "*Martinez* decided not the parameters of the rights of free speech surviving incarceration in a prison, but the limited situations in which prison regulations could have the effect of inhibiting the first amendment rights of persons wishing to correspond with inmates." *Guajardo v. Estelle*, 580 F.2d 748, 754 (5th Cir. 1978).[20] Even more, as the Supreme Court noted in *Thornburgh*, "[t]he implications of outgoing correspondence for prison security are of a categorically lesser magnitude than the implications of incoming materials." 490 U.S. at 413.[21]

---

[20] Because the Eleventh Circuit was previously a part of the Fifth Circuit, cases decided by the Fifth Circuit prior to October 1, 1981, are precedential to this Court. *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981).

[21] Other courts apply the outgoing versus incoming mail distinction, too. *See, e.g., Stow v. Grimaldi*, 993 F.2d 1002, 1004 (1st Cir. 1993); *Bacon v. Phelps*, 961 F.3d 533, 543 (2d Cir. 2020); *Nasir v. Morgan*, 350 F.3d 366, 371 (3d Cir. 2003) ("Because *Thornburgh* holds that *Turner* does not squarely overrule *Martinez* as applied to outgoing mail, we will apply *Turner* to incoming mail and *Martinez* to outgoing

Commissioner Oliver makes another last-ditch argument that *Turner* should apply, asserting that because "email, even outgoing email, is an activity that, 'by its very nature, pose[s] a serious threat to prison order and security,' *Turner* would be the applicable standard had Plaintiff's Amended Complaint challenged the constitutionality of the regulation." [Doc. 170, p. 8 (citing *Thornburgh*, 490 U.S. at 411)]. But that argument misses the mark. Indeed, *Martinez* explicitly permitted prison officials to screen outgoing correspondence. 416 U.S. at 414 n.14. And, to be clear, Plaintiff does not challenge the screening or reading of outgoing emails for safety reasons. *See* [Doc. 64-3, Benning Depo., 87:5–12]. Just because safety precautions must be taken does not extract the email-contact restriction from *Martinez*'s analytical framework.

## II.    *Procunier v. Martinez* Test

With the proper test handled, let's move on to applying it.[22] As outlined in part above, in *Martinez*, the Supreme Court held the "censorship of prisoner mail [is] justified if the following criteria are met." 416 U.S. at 413. "First, the regulation or

---

correspondence."); *Altizer v. Deeds*, 191 F.3d 540, 548 (4th Cir. 1999); *Koutnik v. Brown*, 456 F.3d 777, 784 (7th Cir. 2006).

[22] The Court recognizes the "Herculean obstacles to effective discharge of [prison] duties[,]" and that "the problems of prisons in America are complex and intractable, and . . . are not readily susceptible of resolution by decree." *Martinez*, 416 U.S. at 405. But, "a policy of judicial restraint cannot encompass any failure to take cognizance of valid constitutional claims whether arising in a federal or state institution. When a prison regulation or practice offends a fundamental constitutional guarantee, federal courts will discharge their duty to protect constitutional rights." *Id.* at 405-06.

practice in question must further an important or substantial governmental interest unrelated to the suppression of expression." *Id.* And, "[s]econd, the limitation of First Amendment freedoms must be no greater than is necessary or essential to the protection of the particular governmental interest involved." *Id.*

In the small amount of "argument" he makes in response to Plaintiff's Motion, Commissioner Oliver contends that "[e]mails can be sent to multiple recipients at once and provide a greater opportunity for the coordination of threats both outside and inside the prison." [Doc. 170, p. 8]. Further, Commissioner Oliver argues "GDC's policy of restricting email communications to persons vetted by GDC's security[] is reasonably related to GDC's legitimate interest of maintaining prison security and limiting the potential for threats both inside and outside the prison wall." [*Id.* at p. 9].

Obviously, there is a legitimate governmental need for security and safety in prisons. *See, e.g., Lawson v. Singletary*, 85 F.3d 502, 509 (11th Cir. 1996). However, none of Commissioner Oliver's arguments "show that a regulation authorizing [e]mail censorship [by limiting recipients to those on a prisoner's visitation log] furthers one or more of the substantial governmental interests of security, order, and rehabilitation." *Martinez*, 416 U.S. at 413. Instead, it demonstrates an illogical

comparison in treatment of letters and emails.[23] Indeed, all the concerns listed by Commissioner Oliver are also present in handwritten letters.[24]

For example, Commissioner Oliver contends that emails can be sent to broader audiences[25] as compared to those receiving letters from inmates. To that end, Plaintiff asked his sister to disseminate information regarding prison conditions. First, he sent the information via email, which GDC officers withheld. [Doc. 64-2, ¶ 36]. Next, he sent the same information via letter. But GDC officials did not withhold the letter—only the email. [*Id.* at ¶ 35]. Once again, one of Plaintiff's emails didn't make it out because "it contained information about another offender." [*Id.* at ¶ 46]. But a handwritten version of the same email made it through GDC's review process. [*Id.* at ¶ 48]. The question, then, becomes: What is the

---

[23] Once more, Commissioner Oliver's predecessor argued that "Benning's request would handicap GDC's ability to curb prisoners' communications with co-conspirators outside the prison." [Doc. 123, p. 2]. Yet again, though, there is no limit on the number of people to whom Plaintiff may send a traditional letter. *See, e.g.*, Brief of Appellee at 26, *Benning v. Comm'r, Ga. Dep't of Corrs.*, No. 21-11982 (11th Cir. Dec. 3, 2021), ECF No. 37 ("There is no disputing that Mr. Benning could write the same emails as letters and mail them[.]").

[24] And, to be clear, the letter dilemma is not an issue without a ready solution: GDC already screens letters for improper messages, opens letters randomly for inspection, visualizes contents for contraband, etc. *See generally* [Doc. 156-9 (GDC Offender Receipt of Mail Policy, SOP 227.06)].

[25] The Court also doesn't question GDC's authority to limit offenders' emails to one recipient per message—much like handwritten letters may only be mailed to one person at a time. Even more, GDC's mail policy explicitly reserves the right to limit "offender mail when there is reasonable belief that limitation is necessary to protect public safety or institutional order and security." [Doc. 156-9, p. 8 (GDC Offender Receipt of Mail Policy, SOP 227.06)]. That makes sense for emails, too. But Commissioner Oliver fails to demonstrate how this email contact restriction rule for emails—which doesn't apply to letters—specifically furthers any governmental interest. Conclusory statements that it does isn't legally sufficient.

difference between a letter that violates a supposed safety concern as opposed to an email? It appears nothing—aside from GDC's differential treatment.

But even more importantly, Oliver's concerns are all obviated by the review process instituted at GDC's facilities. *See Benning*, 71 F.4th at 1327 ("The screening and review of inmate emails is conducted by analysts at the GDC's Central Intelligence Unit through an intranet system."); [Doc. 64-2, ¶¶ 26–27 ("All emails are routed through GDC's Central Intelligence Unit where they are electronically screened for a number of confidential key words . . . . If an email contains a key word, it is flagged and stored in a folder to be reviewed by one of GDC's analyst working in the Intelligence Unit. That email will not be released until reviewed.")]. To be sure, screening emails is necessarily less complicated, less labor extensive and extraordinarily more efficient thanks to computer software that can screen hundreds of emails in the same time it takes a GDC officer to read a handwritten letter.

Commissioner Oliver also references an affidavit sworn by Richard Wallace, a GDC Criminal Intelligence Unit analyst. *See* [Doc. 170, p. 9]; [Doc. 64-4, ¶ 3]. In his affidavit, Wallace contends that "inmates are only allowed to communicate with those who have been cleared, after a background check, to visit them at the facility. This rule prevents the inmate from communicating with those who have not been cleared to communicate with him and thereby prevent[s] possible threats to citizens

and prison personnel." [Doc. 64-4, ¶ 28]. But that statement is only half true—there is no apparent policy that prevents an offender from contacting anyone via letter, whether they are on the visitation log or not.[26] Therefore, Commissioner Oliver's purported rationale is weak at best and dishonest at worst.

Commissioner Oliver continues to revert to the same underlying (and now irrelevant) argument: "GDC's rules prohibiting inmates from having their emails forward to other, and prohibiting inmates from including information about other inmates, are designed to keep society, other inmates, and prison staff safe." [Doc. 64-2, ¶ 50]. But such generalities just aren't enough. Commissioner Oliver failed to show a meaningful difference between letters and emails, such that communications via email require additional procedural hoops that don't apply to traditional pen pals.

### III.    *Turner v. Safley* Test

Even assuming, *arguendo*, that *Turner* governs here, that would not change the outcome. To be sure, *Turner* requires a regulation to be "reasonably related to legitimate penological interests" 482 U.S. at 89. In fleshing that standard out, the Supreme Court explained: "First, there must be a valid, rational connection between

---

[26] Commissioner Oliver relies on the fact that Plaintiff only has seven contacts on his inmate visitation list. [Doc. 170, p. 4]. However, the parties' Joint Statement of Stipulated Facts [Doc. 156], includes a stipulation that "Plaintiff wishes to email persons that are not on his visitation list." [Doc. 156, ¶ 20].

the prison regulation and the legitimate governmental interest put forward to justify it." *Id.* (internal citations omitted). Second, a court should consider whether alternative means to the right "remain open to prison inmates." *Id.* at 90. "A third consideration is the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally." *Id.* And finally, "the absence of ready alternatives is evidence of the reasonableness of a prison regulation." *Id.* In other words, a regulation cannot be an "exaggerated response to prison concerns." *Id.* The burden "is not on the State to prove the validity of prison regulations but on the prisoner to disprove it." *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003).

The first factor—which is "the most important of the four"—must "be satisfied if the policy is to survive." *Pesci v. Budz*, 935 F.3d 1159, 1167 (11th Cir. 2019). As the Supreme Court put it, "[i]f the connection between the regulation and the asserted goal is arbitrary or irrational, then the regulation fails, irrespective of whether the other factors tilt in its favor." *Shaw v. Murphy*, 532 U.S. 223, 230 (2001) (internal quotations omitted). On that note, there is "nothing in the record addressing why [these] concern[s] exist[]" for emails but not for handwritten letters. *Daker v. Warren*, 660 F. App'x 737, 744 (11th Cir. 2016) (addressing the first *Turner* factor). In other words, Defendant Oliver offered no specific evidence to show why

the email-contact restriction is reasonable in light of the unlimited contacts an offender might have via handwritten letters.[27] Indeed, the record shows that each email is already screened and reviewed for key words. That should be enough to alleviate the security concerns Oliver puts forward. *Cf. Daker*, 660 F. App'x at 744 ("Moreover, there is no evidence in the record as to why prison officials could not search hardcover books from publishers or booksellers for contraband the same way that they inspect softcover books, or why such inspections would be unreasonable."). In short, the email-contact restriction is irrational.

As to the second consideration, obviously offenders maintain their right to write letters and communicate via other means. Therefore, the second factor falls in favor of the regulation's reasonableness.

But the third factor, evaluating the impact of removing the regulation on the prison and its staff, weighs against Commissioner Oliver and the regulation. Clearly GDC already screens outgoing emails—both by computer system and trained officers. [Doc. 64-4, ¶¶ 16–20]. That means removing the email-contact restriction would not place some new, burdensome workload on GDC or its staff, although it could increase the number of emails that the Criminal Intelligence Unit reviews.

---

[27] To be clear, the Court remembers the burden is on Plaintiff to disprove the validity of the regulation. *Overton*, 539 U.S. at 132. But, after Plaintiff offered his arguments, Commissioner Oliver passed on his chance to persuade the Court otherwise when he opted to not file a reply brief.

Regardless, GDC maintains its ability to screen emails for flagged words and limit the number of recipients an offender can include on each email. But as it stands, and with the evidence presented, removing the email-contact restriction would not create a "*significant* ripple effect on fellow inmates or on prison staff." *Turner*, 482 U.S. at 90 (emphasis added). This is especially true given that automated systems read prisoners' outgoing emails with much more efficiency than guards physically read each letter.

Likewise, the email-contact restriction seems to be an "exaggerated response" to a hypothetical problem. *Id.* Here, GDC already implemented "an alternative that fully accommodates the prisoner's rights at *de minimis* cost to valid penological interests," namely, the automated email-screening process. *Id.* at 91. And, even worse, there is no evidence that emails create some threat to prison security and safety not presented by other means of offender communication with the outside world. *Cf. Daker*, 660 F. App'x at 745 ("[A]s to the fear that hardcover books could be used as weapons, there was no evidence that such books had in fact been used as weapons . . . The question is whether there is a reasonable basis for believing that allowing hardcover books increases the likelihood of violence at CCADC, and on that issue there is no evidence to warrant granting summary judgment in favor of Sheriff Warren.").

In short, each of Oliver's concerns can be addressed through a system already in place—therefore, even under the *Turner* standard, the email-contact restriction is not a rational response to the stated government need.

## IV.    Remedy

Now the attention turns to the appropriate remedy. Once again, to obtain injunctive relief, a party must show: "(1) that he has prevailed in establishing the violation of the right asserted in his complaint; (2) there is no adequate remedy at law for the violation of this right; (3) irreparable harm will result if the court does not order injunctive relief; and (4) if issued, the injunction would not be adverse to the public interest." *Thomas v. Bryant*, 614 F.3d 1288, 1317 (11th Cir. 2010).

### A.    Injunctive Relief

A plaintiff seeking a permanent injunction "must satisfy a four-factor test before a court may grant such relief." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). Namely, he must show: "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *Id.* "The decision to grant or deny permanent injunctive relief is an act of equitable discretion by the

district court, reviewable on appeal for abuse of discretion." *Id.* Moreover, Federal Rule of Civil Procedure 65 requires "an order granting an injunction" to include: (1) "the reasons why it issued," (2) "its terms specifically," and (3) a description of "the act or acts restrained or required." Fed. R. Civ. P. 65(d)(1).

First, as discussed at length above, GDC's email-contact restriction does not pass constitutional muster. Therefore, Plaintiff "prevailed in establishing the violation of the right asserted in his [amended] complaint." *Id.* Second, there is no adequate remedy at law because monetary damages cannot undo the damages to Plaintiff's constitutional rights. *See, e.g., Barrett v. Walker Cnty. Sch. Dist.*, 872 F.3d 1209, 1229 (11th Cir. 2017). Third, there is a presumption that irreparable harm will result since this action involves the First Amendment. *See Siegel v. LePore*, 234 F.3d 1163, 1178 (11th Cir. 2000) (en banc) ("The only areas of constitutional jurisprudence where we have said that an on-going violation may be presumed to cause irreparable injury involve the right of privacy and certain First Amendment claims establishing an imminent likelihood that pure speech will be chilled or prevented altogether."). Additionally, as outlined above, an injunction on the email-contact restriction is not adverse to the public interest. Instead, GDC still maintains its ability to screen and prohibit certain types of communications.

What it may not do, though, is limit an offender's ability to contact no more

than 12 non-inmates via email with no reasonable or rational explanation while simultaneously allowing that same inmate to contact any number of non-inmates via regular or snail mail. Indeed, "a permanent injunction would not disserve the public interest. Rather, it would protect the public interest by protecting those rights to which it too is entitled." *Nat'l Abortion Fed'n v. Metro. Atlanta Rapid Transit Auth.*, 112 F. Supp. 2d 1320, 1328 (N.D. Ga. 2000).

      B.   <u>PLRA Factors</u>

Since Plaintiff is a prisoner, the Prison Litigation Reform Act requires the Court to consider various factors before granting injunctive relief to him. Chiefly among them, a court must ensure such relief "extend[s] no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs." 18 U.S.C. § 3626(a)(1)(A). Further, a "court shall not grant or approve any prospective relief unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right." *Id.* And finally, a "court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the relief." *Id.*

The Court finds that such relief is narrowly drawn, as it does not enjoin GDC's enforcement of SOP 204.10 in its entirety, nor does it prohibit GDC from

maintaining reasonable security measures over outgoing emails. *See Hoffer v. Sec'y, Fla. Dep't of Corr.*, 973 F.3d 1263, 1278 (11th Cir. 2020) (citing 18 U.S.C. § 3626(a)(1)(A)).

The relief also extends "no further than necessary to correct the violation of the Federal right," *id.*, because, as the Court concluded above, GDC's current enforcement of the email-contact restriction violates Plaintiff's First Amendment rights. The Court's injunction "only targets the narrow constitutional violation [it] identified[.]" *Thomas*, 614 F.3d at 1324.

Lastly, the foregoing injunction "is the least intrusive means necessary to correct the violation of the Federal right." *Hoffer*, 973 F.3d at 1278. To be sure, the Court recognizes (and appreciates) the difficult task of running a correctional facility, and it does not intend to preach to the proverbial choir on how to best run a prison. However, since this injunction would not create any new work and largely mirrors the processes GDC already implements—both for emails and handwritten letters—"the injunction will require little to no additional expenditures on the part of" GDC. *Thomas*, 614 F.3d at 1325. "Nor does the injunction require onerous continuous supervision by the court or judicial interference" in running GDC's facilities. *Id.* In all, the narrow injunctive relief granted by this Order survives PLRA scrutiny. The First Amendment simply requires it.

## CONCLUSION

Accordingly, the Court **ORDERS** that Defendant Tyrone Oliver is hereby **ENJOINED** from enforcing SOP 204.10's email-contact restriction—*i.e.*, limiting an offender's email contacts to those 12 persons who have been cleared to be on that offender's in-person visitation list. GDC may continue to screen emails, prohibit emails from being sent to multiple recipients at a time, and other reasonable measures (like those applied to handwritten letters). Any additional relief regarding SOP 204.10 is **DENIED**.

As to Plaintiff's due process claims, and pursuant to Defendant Oliver, Patterson, and Edgar's Stipulated Facts [Doc. 147], the Court **DECLARES**:

- Plaintiff has a protected liberty interest—grounded in the First Amendment and protected by the procedural due process clause of the Fourteenth Amendment—in outgoing emails. *Benning*, 71 F.4th at 1330.

- In the event a correctional facility screens and censors an outgoing email, Plaintiff is entitled to notice, an opportunity to be heard (*i.e.*, appeal), and a neutral decision maker. *Id.* at 1329.

- Because the Georgia Department of Corrections did not afford Plaintiff these protections, it violated Plaintiff's constitutional rights.

As to Plaintiff's First Amendment claims, the Court **DENIES** Oliver's Motion for Summary Judgment [Doc. 160], **GRANTS** Plaintiff's Motion for Summary Judgment [Doc. 162], and **ENJOINS** the Georgia Department of Corrections from enforcing its

email-contact restriction as outlined above. The Clerk is **DIRECTED** to **ENTER**

**JUDGMENT** and **CLOSE** this case.

      **SO ORDERED**, this 18th day of November, 2024.

                        _S/ Tilman E. Self, III_

                        **TILMAN E. SELF, III, JUDGE**
                        **UNITED STATES DISTRICT COURT**